JAMES C. LENTZ v. JACK HAYNES LENTZ

No. 6812SC340

(Filed 23 July 1969)

**1. Vendor and Purchaser § 1—— option defined —— construction of option**

An option is a unilateral agreement by which the maker grants the optionee the contractual right to accept or reject a present offer within a limited or reasonable time, and because it is unilateral, an option is construed strictly in favor of the maker.

**2. Vendor and Purchaser § 3— property covered by option to purchase**

An option granting plaintiff the right to purchase from defendant all the right, title and interest which defendant has or may hereafter acquire from the estate of his grandfather by will *is held* not to include an interest in property acquired by defendant after execution of the option by inheritance from his mother, who had acquired the property by devise from defendant's grandfather.

**3. Vendor and Purchaser § 5;     Trial § 33— failure to explain law arising on the evidence**

In this action to enforce specific performance of an option wherein an issue was submitted to the jury as to whether plaintiff was the owner of the option at the time in question, the trial court failed to declare and explain the law arising on the evidence as required by G.S. 1-180 where the jury was given no guidance as to what facts, if found by them to be true, would justify them in answering the issue either in the affirmative or the negative.

**4. Vendor and Purchaser § 5;     Trusts § 6— specific performance of option — assignment of option by trustee — failure to qualify as trustee**

In this action to enforce specific performance of an option granting plaintiff the right to purchase real property from defendant, the pleadings having established that plaintiff had assigned the option to another, and plaintiff having introduced evidence that the assignee devised the option to his wife, individually and as trustee for his two children, with full power of disposition, and that the assignee's wife, individually and as trustee, and two children executed a reassignment of the option to plaintiff, the trial court erred in giving the jury instructions from which the jury may have inferred that if the assignee's wife had failed to "qualify" as trustee in the office of the clerk of superior court, her execution of the instrument purporting to reassign the option to plaintiff was thereby rendered void, since an otherwise valid conveyance by a testamentary trustee is not made void by reason of his failure to first qualify under the laws applicable to executors as now required by G.S. 28-53.

**5. Trusts §§ 2, 6— creation of powers and title of trustee**

A trustee derives his title, powers and duties from the instrument creating the trust which names him trustee and conveys title of the trust properties to him.

**6. Trusts §§ 2, 6— derivation of trustee's legal existence**

A trustee's legal existence is derived from the instrument creating the trust, not from adminicular proceedings relating to qualification and posting bond or from authority of the court, and the court cannot prevent the transmission and vesting of title of property devised in trust in the trustee named in the instrument.

**7. Trusts § 2— disclaimer by trustee — acceptance presumed**

Since the duties of a trustee may not be imposed upon one without his consent, he may disclaim if he has not theretofore in some way, by word or conduct, manifested his consent to act, but the trustee's acceptance of the trust is presumed until he declines.

**8. Trusts § 2—    person named as executrix and trustee — failure to qualify as executrix — disclaimer as trustee**

The fact that a person named in a will as executrix and trustee failed to qualify as executrix and acquiesced in the qualification of another as successor executor does not evidence a disclaimer on her part to act as trustee, where there is nothing in the will to manifest any intention of the testator that such person could not disclaim as executrix and still act as trustee.

APPEAL by plaintiff from *Brewer, J.,* February 1968 Civil Session of HOKE Superior Court.

This is a civil action in which plaintiff seeks judgment to enforce specific performance of an option to purchase an interest in real property from defendant. By allegations and admissions in the pleadings and by stipulation of the parties, the following facts were established: Plaintiff and defendant are brothers and are sons of Ina Thomas Lentz and grandsons of J. C. Thomas, both of whom are deceased. On 19 August 1957, the defendant, for a valuable consideration paid him by plaintiff, executed a written option agreement under seal, dated 15 August 1957, by which defendant, referred to as the "grantor," granted plaintiff, referred to as the "grantee," "the exclusive option or right to purchase the following described tract or parcel of real estate:

> "All the right, title and interest which I now have or may hereafter acquire in the estate of my grandfather, J. C. Thomas, deceased, late of Hoke County by will as of the public record as appears in the Office of the Clerk of Superior Court of Hoke County and especially but not limited to that 214-acre tract of land located on the west of the Town of Raeford and on both sides of N.C. Highway #211 and including the Lentz residence, now divided into apartments and all outbuildings and being the same property in which the mother of both parties to this option has a life interest."

The option agreement provided that defendant agreed "to convey said interest above described upon compliance with the following TERMS AND CONDITIONS:

> "1.    That the duration of this option shall be for a period of *two* years from the date of the grantor's interest in said premises becomes vested in possession.

> "2.    That the grantee, herein, pay to the grantor the sum of Eight Thousand Dollars ($8,000)."

J. C. Thomas, grandfather of the parties, died testate in 1926.

By Item Four of his will, which was duly admitted to probate, he devised the northern portion of his home farm situated in Raeford Township, Hoke County, N. C., and lying west of the Town of Raeford, to his daughter, Ina Thomas Lentz, for life, with the remainder in fee to her children living at the time of her death. (A metes and bounds description of this tract, attached as exhibit "B" to the complaint, states that it contains 235 acres, more or less; the parties in their pleadings and briefs have referred to it as containing 214 acres. For convenience and in accordance with the designation adopted by the parties, this tract will be referred to hereinafter as the "214-acre" tract.)

By Item Two of his will, J. C. Thomas devised two other tracts, one consisting of 52 acres and the other of 142 acres, the two together totaling 194 acres (for convenience being hereinafter referred to as the "194-acre" tract) to his son, William Marshall Thomas, for life, then to his son's wife, Agnes Thomas, for her life, with remainder in fee to the children of said son living at the time of his death, and if there be no child living, then to the brothers and sister of said son. William Marshall Thomas died on 2 May 1961, having been predeceased by his wife, and without leaving natural children surviving. (He did leave an adopted son surviving, but a majority of the North Carolina Supreme Court held that an adopted child was not included in the devise in remainder to a child or children of the life tenant; see *Thomas v. Thomas*, 258 N.C. 590, 129 S.E. 2d 239.) William Marshall Thomas left surviving two brothers and one sister, Ina Thomas Lentz, mother of the plaintiff and defendant. Ina Thomas Lentz died intestate on 19 April 1964, without having disposed of her interest in the 194-acre tract, and leaving surviving six children, including the plaintiff and defendant in this action. Upon her death intestate, plaintiff and defendant each became the owner of a 1/18 (a 1/6 of a 1/3) undivided interest in the 194-acre tract which had been devised by Item Two of the will of their grandfather, J. C. Thomas.

Upon the facts stipulated by the parties and alleged and admitted in their pleadings in this action, the trial court entered an order ruling as a matter of law that the property described in the written option agreement between the parties did not include the defendant's 1/18 undivided interest in the 194-acre tract acquired by inheritance from his mother, Ina Thomas Lentz, upon her death intestate on 19 April 1964. Plaintiff excepted to this ruling, and this exception is the basis for plaintiff's first assignment of error.

Plaintiff in his complaint had alleged and defendant by answer

admitted that on 30 March 1963 plaintiff had assigned to C. L. Thomas, an uncle, all of plaintiff's rights in the option agreement and that C. L. Thomas had died a resident of Hoke County in the year 1963. Plaintiff also alleged, but defendant by answer denied, either outright or by denial of knowledge or information sufficient to form a belief, that C. L. Thomas left a last will by the terms of which all right, title and interest in his estate vested in his wife, Marguerite F. Thomas, individually, and as trustee for Marguerite Iris Davis and Crawford L. Thomas, Jr., children of said deceased; that for valuable consideration Marguerite F. Thomas, individually and as trustee, and Marguerite Iris Davis and Crawford L. Thomas, Jr., both of whom were of age, executed and delivered to plaintiff on 28 February 1966 a reassignment of the option; that the plaintiff is now the owner and holder of the option and entitled to enforce the same; that on 9 March 1966 plaintiff had notified defendant in writing that he desired to exercise the option and that he was ready, able and willing to tender to the defendant the purchase price; that the defendant ignored this notice and that physical tender of the money became vain and useless and was not required by law. In his complaint plaintiff expressly tendered to defendant the sum of $8,000.00 by payment of that amount into the office of the clerk of Superior Court of Hoke County at the time of instituting this action.

Defendant in his answer admitted that on 30 March 1963 plaintiff had conveyed his interest in the option to C. L. Thomas, but denied knowledge or information relative to the allegations concerning the estate of C. L. Thomas and the reconveyance of the option by Marguerite F. Thomas and her children to the plaintiff; and defendant expressly denied that plaintiff was entitled to enforce the option. By way of further answer, defendant alleged that the plaintiff had never at any time, while the owner and holder of the option, paid or tendered payment of the $8,000.00 as required by the option, and that the option had now expired.

After presentation of evidence by the plaintiff, and no evidence being offered by defendant, the case was submitted to the jury upon the following issues:

"1. Did the defendant, Jack Haynes Lentz, execute and deliver to James C. Lentz the written option contract dated August 15, 1957, registered in Book 107, page 207, Hoke County, North Carolina, Registry?

"2. If so, was the plaintiff James C. Lentz the owner and holder of such agreement from February 28, 1966, until the expiration of the option period on April 19, 1966?

"3. Did the plaintiff, James C. Lentz, between the dates of February 28, 1966, and April 19, 1966, notify the defendant Jack Haynes Lentz of his intention to exercise the option rights under the agreement?

"4. If so, did the plaintiff at such time and thereafter, during the option period, stand ready, willing and able to comply with its terms of payment to the defendant?

"5. Did the defendant, by his acts and conduct, disavow the contract and render physical tender of the purchase price unnecessary?"

By stipulation of the parties the jury answered the first issue "Yes." For its verdict, the jury answered the second issue "No," and did not answer the remaining issues. From judgment decreeing that plaintiff is not entitled to specific performance of the option, plaintiff appeals.

*Nance, Collier, Singleton, Kirkman & Herndon, by James R. Nance for plaintiff appellant.*

*Quillin, Russ, Worth & McLeod, by Joe McLeod for defendant appellee.*

PARKER, J.

[2] Appellant's first assignment of error presents the question whether the option here sued upon relates solely to defendant's 1/6 undivided interest in the 214-acre home tract, which defendant received as one of the remainderman under Item Four of his grandfather's will, as defendant contends, or whether in addition thereto it includes defendant's 1/18 undivided interest in the 194-acre tract, which was originally devised to William Marshall Thomas for life by Item Two of said will, as plaintiff contends. On the admitted and stipulated facts, the trial court ruled as a matter of law that defendant's 1/18 undivided interest in the 194-acre tract is not included in the option. We agree.

[1] An option is a unilateral agreement by which the maker grants the optionee the contractual right to accept or reject a present offer within a limited or reasonable time. It is unilateral because only the maker is bound; the other party is not obligated in any way to perform by purchasing. Because options are unilateral, they are construed strictly in favor of the maker. *Ferguson v. Phillips,* 268 N.C. 353, 150 S.E. 2d 518; *Carpenter v. Carpenter,* 213 N.C. 36, 195 S.E. 5.

**[2]**   The option before us grants to plaintiff the right to purchase "the following described *tract* or *parcel* of real estate," not *tracts* or *parcels,* indicating that the subject matter would be a single tract of land. It also refers to the rights which the maker held or might thereafter acquire in the estate of his grandfather by *will;* defendant acquired his 1/18 interest in the William Marshall Thomas 194-acre tract by inheritance from his mother, not by will of his grandfather. Furthermore, he acquired this interest almost seven years after the option agreement was prepared and only after the death of William Marshall Thomas without natural born children surviving, after a decision of the North Carolina Supreme Court, and after the subsequent death of his mother intestate without having previously disposed of the property. Finally, the option refers to the property as "being the same property in which the mother of both parties has a life interest." The only property in which the mother had a life interest was the 214-acre home tract devised to her for life by Item Four of her father's will.

Considering all of these factors together, and construing the option in favor of the maker, it is abundantly clear that the only property which the parties contemplated and which they intended to include in the option at the time it was executed in 1957, was the defendant's interest under Item Four of his grandfather's will in the 214-acre home tract in which his mother then held a life estate. Nothing in the language of the option indicates that the parties intended to include therein other tracts, devised by his grandfather to other persons, and in which defendant years later acquired an interest only as result of a series of fortuitous events.

The cases cited by appellant relating to the doctrine of after-acquired property are not apposite. These cases deal with the situation which arises when a grantor conveys rights in a definitely described tract of land, in which at the time of conveyance he has no title, but in which he thereafter acquires some title. Here we are concerned with the description of the tract itself.

While the trial court's ruling was made on the basis of facts admitted and stipulated prior to trial, it may be noted that at the trial plaintiff himself testified on cross-examination that he "never made any claim for any property other than the homeplace until after the suit was filed," and then when he filed suit he "asked for the homeplace plus two other pieces of property." Plaintiff further testified that in a letter to defendant he had made a notation about a release on the Marshall Thomas property, and that "my option that I had with him only concerned my mother's place and that I did not

know that these other two shares were included in it." We think it abundantly clear that the option by its express provisions did not include any interest in the William Marshall Thomas 194-acre tract and that the parties never intended that it should. There is no merit in appellant's first assignment of error.

Appellant assigns as error portions of the judge's charge to the jury relating to the second issue. In this connection it had been established by the pleadings that on 30 March 1963 plaintiff had assigned his rights in the option to his uncle, C. L. Thomas, and that C. L. Thomas had died a resident of Hoke County later in the year 1963. Plaintiff introduced in evidence the will of C. L. Thomas, which had been duly admitted to probate. This instrument made no express mention of the option, but did devise and bequeath the residuary estate to testator's wife and two children, 1/3 to each. The will directed that the wife's 1/3 should be paid to her directly upon settlement of the estate, and that the children's shares should be placed in the hands of the wife, Marguerite F. Thomas, as trustee until the younger of the two children should reach 25 years of age. The will granted the trustee during continuance of the trust full power and authority "at her discretion, to sell at such price, upon such terms and in such manner as she may deem best, any property which at any time constitutes a part of this trust." The will further provided that in event testator's wife, Marguerite F. Thomas, should predecease him, "or otherwise be unwilling or unable to serve as trustee, as hereinabove set forth," then J. L. McNeill should serve as first alternate trustee and J. W. McPhaul as second alternate trustee. The will also named the wife as executrix, with the same provisions that J. L. McNeill and J. W. McPhaul should serve as first and second alternates. Plaintiff introduced in evidence a written "Release and Reassignment of Options," dated 28 February 1966, executed by Marguerite F. Thomas, both individually and in her capacity as trustee under the will of C. L. Thomas, and also executed by the son and daughter of C. L. Thomas, and joined in by the daughter's husband. This instrument recites that the parties who executed it were the sole heirs at law and sole beneficiaries under the will of C. L. Thomas, deceased. By this instrument, which was duly recorded, the parties who executed it reassigned to the plaintiff all rights they had in the option.

Marguerite F. Thomas, appearing as a witness for plaintiff, testified that her husband, C. L. Thomas, died on 29 May 1963; that she had never qualified as executrix under her husband's will and that Mr. McNeill had qualified as executor; that at the time the instrument reassigning the option to plaintiff was executed on 28

February 1966, her husband's estate was settled; that on that date her youngest child was 22 years old and would become 25 years old on 26 August 1968. The clerk of Superior Court of Hoke County was also called as a witness and testified to the qualification of J. L. McNeill as executor under the will of C. L. Thomas on 6 June 1963 and further testified there had never been any separate order of appointment of any trustee under said will. The clerk also testified that he knew "that Mr. J. L. McNeill is acting in the capacity as trustee under the will of C. L. Thomas." Marguerite F. Thomas, the widow, had also testified that Mr. McNeill "also qualified as trustee under the will of my husband and is at this time acting as trustee for both of my children and will act in that capacity until my youngest reaches 25 years of age and that will be August 26." Marguerite F. Thomas also testified that her attorneys, one of whom was Mr. McNeill, had advised her and prepared the papers for her at the time she executed the reassignment of the option to plaintiff.

[3, 4]   When charging the jury on the second issue, the court stated the contentions of the parties, including the defendant's contention that no one had qualified as trustee of the C. L. Thomas estate. The court then charged the jury as follows:

> "Now, members of the jury, if the plaintiff has satisfied you by the greater weight of the evidence that the plaintiff was the owner of the option contract in issue in this case from February 28, 1966, to April 19, 1966, it would be your duty to answer this issue YES. If the plaintiff has failed to satisfy you of these facts by the greater weight of the evidence, it would be your duty to answer the issue No."

This charge completely failed to "declare and explain the law arising on the evidence," as required by G.S. 1-180. The jury was given no guidance as to what facts, if found by them to be true, would justify them in answering the issue either in the affirmative or the negative. The jury may well have been left with the impression that if the trustee named in the will had failed to "qualify" as trustee in the office of the clerk of superior court, her execution of the instrument purporting to reassign the option to plaintiff was thereby rendered void. In this connection the court gave no explanation of the legal effect of G.S. 28-53 which provides:

> "Trustees appointed in any will admitted to probate in this State, into whose hands assets come under the provisions of the will, shall first qualify under the laws applicable to executors, and shall file in the office of the clerk of the county where the will is probated inventories of the assets which come into his

hands and annual and final accounts thereof, such as are required of executors and administrators. The power of the clerk to enforce the filing and his duties in respect to audit and record shall be the same as in such cases. This section shall not apply to the extent that any will makes a different provision."

The requirement that a testamentary trustee shall "first qualify under the laws applicable to executors," became part of this statute effective 1 July 1961 by amendment enacted by Chap. 519 of the 1961 Session Laws. By Chap. 1176 of the 1965 Session Laws this requirement was made inapplicable to trustees appointed by will executed prior to 1 July 1961, unless the will had been admitted to probate prior to the effective date of that chapter, which was 1 July 1965.

[4-6]    An otherwise valid conveyance by a testamentary trustee is not made void by reason of his failure to first qualify as now required by G.S. 28-53. The statute does not so provide. A trustee derives his title, powers, and duties from the instrument creating the trust which names him trustee and conveys title to the trust properties to him. See 2 Wiggins, Wills and Administration of Estates in North Carolina, §§ 293, 300. His legal existence is derived from the instrument creating the trust, not from adminicular proceedings relating to qualification, posting bond, etc. "(T)he Trustee takes his position by virtue of the donative acts of the grantor and not from the authority of the court." *In re Neill's Estate*, 195 Misc. 690, 89 N.Y.S. 2d 394; see also, Bogert, Trusts and Trustees 2d, § 151. Nor can the court prevent the transmission and vesting of title to property devised in trust in the trustee named in the will. *Riggs v. Moise*, 344 Mo. 177, 128 S.W. 2d 632, citing *Parker v. Sears*, 117 Mass. 513; *Monk v. Everett*, 277 Mass. 65, 177 N.E. 797; *Mullanny v. Nangle*, 212 Ill. 247, 72 N.E. 385; *LaForge v. Binns*, 125 Ill. App. 527; *In re Goulden*, 102 Misc. 642, 170 N.Y.S. 154; *City Council of Augusta v. Walton*, 77 Ga. 517, 1 S.E. 214.

[7, 8]    It is true that since the duties of a trustee may not be imposed upon one without his consent, he may disclaim if he has not theretofore in some way, by word or conduct, manifested his consent to act. Lee, North Carolina Law of Trusts 3rd, § 4c; Bogert, Trusts and Trustees 2d, § 150, p. 64, *et seq*. However, a trustee's acceptance of the trust is presumed until he declines, *Benevolent Society v. Orrell*, 195 N.C. 405, 142 S.E. 493, and the evidence here is such that the jury could have found that *at the time of the execution of the reassignment* in 1966 Marguerite F. Thomas had done nothing to indicate her unwillingness to serve. On the contrary, her

execution of the reassignment would tend to indicate her acceptance of the trusteeship, particularly in view of her evidence that the papers were prepared for her by attorneys who advised her, one of them being Mr. McNeill. There is no evidence of any act of anyone as trustee other than this, occurring prior to the time the reassignment was executed. The testimony of the clerk of superior court as to who was serving as trustee related to the time of trial, some two years after the execution of the reassignment. Mrs. Thomas's statement that Mr. McNeill "is still serving" related to the time of the trial. Nor would the fact that Mrs. Thomas had failed to qualify as executrix of her husband's will and had apparently acquiesced in the qualification by Mr. McNeill as successor executor, evidence a disclaimer on her part to act as trustee. "Unless a different intention of the settlor is properly manifested, if the same person is appointed both executor and trustee under a will, he may accept as executor and disclaim as trustee, and conversely he may disclaim as executor and accept as trustee." Restatement of the Law of Trusts 2d, § 102. Nothing in the will of C. L. Thomas manifests any intention of the testator that his wife could not disclaim as executrix and yet still act as trustee.

[4] The court's instruction as given was misleading in that the jury could have understood therefrom that unless Marguerite F. Thomas "qualified" as trustee in the office of the clerk of superior court, she could not validly execute the reassignment and that without such qualification there was no trustee who could act in any capacity. This constituted prejudicial error and entitles plaintiff to a

New trial.

BROCK and BRITT, JJ., concur.