DONALD WILFORD RICE AND WIFE PATRICIA BAKER RICE v. PAUL GREGORY WOOD AND KIM IRVING HEATH D/B/A C & A ASSOCIATES

No. 8621DC143

(Filed 5 August 1986)

1. Mortgages and Deeds of Trust § 1— deed and option to repurchase—allegedly intended as mortgage—defendants' motion for directed verdict properly denied

There was substantial evidence sufficient to support plaintiff's prima facie case that a transaction in fact constituted a mortgage rather than a deed and option to repurchase and the trial court properly denied defendants' motion for directed verdict where foreclosure proceedings had been instituted on plaintiffs' house; plaintiffs' house was purchased by defendants from plaintiffs at less than fair market value; the sales price was arrived at by adding up plaintiffs' debts and the costs of the transaction; the transaction began out of negotiations for a loan rather than a sale; plaintiffs remained in possession, paying rent equivalent to their mortgage payments; defendants charged punitive late fees for past due rent; the price specified for reconveyance was the amount advanced by defendants plus a specified profit over the option period; and defendants eventually claimed that plaintiffs had breached the rental agreement and that the option to repurchase was void and sued plaintiffs in summary ejectment. N.C.G.S. § 1A-1, Rule 50(a).

2. Mortgages and Deeds of Trust § 1— equitable mortgage—instructions—erroneous

In an action in which plaintiffs alleged that a deed and option to repurchase constituted a mortgage, the trial court erred by refusing to submit to the jury the factors of whether a debt existed between the parties and the conduct of the parties before, at and after the transaction.

APPEAL by defendants from *Hayes, Judge.* Judgment filed 17 September 1985 in District Court, FORSYTH County. Heard in the Court of Appeals 11 June 1986.

This case originally began in 1981 when defendants Wood and Heath, d/b/a C & A Associates brought a summary ejectment action against the plaintiffs, Donald and Patricia Rice. From an adverse ruling before a magistrate the Rices appealed to the District Court. They filed an answer and counterclaim and a third-party complaint against Harvey E. Fagerberg and Brantley Realty & Insurance Company. The third-party action was subsequently dismissed. Defendants Wood and Heath made a motion to dismiss the Rices' counterclaims, which was denied. Wood and Heath then took a voluntary dismissal of their summary ejectment action which left remaining only the counterclaims filed by the Rices. When the case came on for trial in September 1985 the trial court restyled the case designating Mr. and Mrs. Rice as plaintiffs and Wood and Heath d/b/a C & A Associates as defendants.

The plaintiffs' evidence established the following:

In 1969 Donald Rice and wife purchased a home at 3036 Airport Road, Winston-Salem. The purchase price was $19,950.00 financed through Cameron-Brown Company. The monthly mortgage payments were originally $139.00 but had gradually increased. In 1980, Cameron-Brown notified Mr. Rice that his mortgage payments would be increased to $425.00 per month for 10 months in order to replenish his escrow account. Mr. Rice was unable to meet this increase and fell several months behind in his mortgage payments. As a result, Cameron-Brown instituted foreclosure proceedings.

Upon receiving notice of foreclosure, Mr. Rice, an employee of R. J. Reynolds, applied to his credit union for a loan. Shortly thereafter Mr. Rice received a letter from Harvey Fagerberg, a real estate agent with Brantley Realty and Insurance Company. In his letter Mr. Fagerberg explained that he had learned of the Rices' financial difficulties and impending foreclosure and offered his help. Mr. Rice met with Mr. Fagerberg and explained that he needed a loan to enable him to keep his house. Mr. Fagerberg indicated that he could help Mr. and Mrs. Rice and arranged to meet with both of them the next day. As a result of their meeting

with Mr. Fagerberg, Mr. Rice cancelled his loan application with his credit union.

Mr. Fagerberg then arranged what the Rices testified they understood to be a second mortgage on their home. Both Mr. and Mrs. Rice testified that they requested a loan from Mr. Fagerberg, that they explained they wanted a second mortgage and wanted to keep their home. They testified that at no time did they ever intend to sell their home, but they admitted to signing all of the relevant documents. They did not read all of the documents that they signed though no one prevented them from reading the documents. They further testified that no one read or explained the documents to them and that at all times they believed they were signing documents to obtain a second mortgage on their home.

The first document the Rices signed was an exclusive listing agreement authorizing Brantley Realty to list the property for sale and to procure a purchaser at the price of $21,250.00. Mr. Rice testified that at the time in 1980 the fair market value of the property was approximately $46,000.00.

After the listing agreement was signed Mr. Fagerberg put the Rices together with defendants Wood and Heath d/b/a C & A Associates. The defendants agreed to invest in the Rices' home with a buy-back option and on 19 August 1980 the Rices signed a standard form "Offer to Purchase and Contract" which had been filled in by Mr. Fagerberg. The purchase price was $21,000.00 to be paid as follows: $500.00 earnest money, $16,963.00 to assume the unpaid principal balance of the mortgage to Cameron-Brown and $3,550.00 cash at closing. The purchase price was arrived at by adding up the Rices' debts and the cost of the transactions, i.e., mortgage assumption, foreclosure costs, attorney fees, brokerage fees and deed preparation. At closing, the Rices received $743.08 cash. Attached to the offer to purchase was an additional document signed by the Rices giving them the option within 18 months to reassume their mortgage and repurchase their home for the sum of $4,790.00 ($4,037.00 buyer's cash outlay plus $753.00 buyer's profit for the 18-month period). The option to repurchase expired on 28 February 1982.

Also included was a "Residential Rental Contract" which provided for an 18-month rental term, from 27 August 1980 through

28 February 1982, during which time the Rices would retain possession of the home. Monthly rent payments required from the Rices were $216.00 — the same amount as the monthly mortgage payments due to Cameron-Brown. A handwritten provision in the rental contract provided that the Rices would be responsible for "all maintenance, repairs, and other items as noted in Standard Provision #2" of the residential rental contract. Standard provision number 2 was entitled "Landlord's Obligations" and included such responsibilities as complying with all building and housing codes and making all necessary repairs due to ordinary wear and tear and all electrical, plumbing, sanitary, heating, ventilating and air conditioning systems. Another handwritten provision provided that "a late fee of $20.00 per day will be charged for rental payments received after the first day of each month."

The Rices fell behind in their rent payments and on 19 January 1981 the defendants brought the summary ejectment action seeking possession of the property, unpaid rent in the amount of $432.00 and late fees totaling $612.00. Judgment was entered against the Rices in the amount of $432.00. The Rices then sought legal counsel. Through counsel the Rices appealed and stayed execution on the judgment by paying rent into the court. On 30 January 1981 the Rices' attorney sent a letter to defendant Wood stating that the Rices intended to exercise their option to repurchase but requested that the buyer's profit of $753.00 be reduced and prorated over the six-month period that had elapsed from August 1980 through January 1981. This offer was eventually rejected by the defendants. On 19 February 1982 defendant Wood wrote a letter to Mr. and Mrs. Rice informing them that the option period would expire on 28 February 1982. It was not until March 1982 that Mrs. Rice informed her attorney of the letter. No other attempt to exercise the option to repurchase was made before the option period expired on 28 February 1982. However, plaintiffs' evidence was that the defendants had previously informed them that they were not interested in allowing plaintiffs to repurchase because the plaintiffs had failed, in the past, to pay their rent on time. In March 1982 the Rices' attorney contacted the defendants and offered the full amount to repurchase the property. The offer was rejected because the option period had expired.

---

Rice v. Wood

---

As to the sale of the property with a buy-back option the defendants' evidence was contradictory. Mr. Fagerberg testified that he informed the Rices that he could not make them a loan. He testified that he explained the various options available to the Rices and that Mr. Rice expressed interest in the conditional sale with a buy-back option. Mr. Fagerberg further testified that he explained the conditional sale to the Rices and that they had no objections or questions. He stated that Mr. Rice wanted to receive in cash somewhere between $750.00 and $1,000.00. Both Mr. Wood and Mr. Heath testified that they never intended to make any loan to the Rices. They entered into the arrangement as a business investment and created the partnership C & A Associates solely for the purpose of buying the Rice home as investment property. Mr. Wood testified that he reviewed and discussed the terms of the rental contract with both Mr. and Mrs. Rice. Mr. Heath testified that at closing all documents were explained and discussed and that the Rices were fully informed as to the transactions taking place.

The case was submitted to the jury on two alternative theories: (1) did the deed and option to repurchase taken together constitute a mortgage? or (2) did the defendants breach their contract to reconvey the property to the plaintiffs? The jury answered the first issue in favor of the plaintiffs and awarded to them the sum of $26,132.00. Defendants appeal.

*Legal Aid Society of Northwest North Carolina, Inc. by Ellen W. Gerber and J. Griffin Morgan for plaintiff-appellees.*

*Laurel O. Boyles for defendant-appellants.*

EAGLES, Judge.

I

[1] Defendants first assign error to the trial court's denial of their motions for directed verdict made at the close of plaintiffs' evidence and all the evidence. By introducing evidence, defendants waived their motion made at the close of plaintiffs' evidence. *Overman v. Products Co.*, 30 N.C. App. 516, 227 S.E. 2d 159 (1976). We therefore consider only the trial court's denial of defendants' motion made at the close of all the evidence. Defendants contend that the evidence presented conclusively shows that the transac-

tion was an absolute sale with a contract or option to repurchase. We disagree.

The purpose of a G.S. 1A-1, Rule 50(a) motion for directed verdict is to test the legal sufficiency of the evidence to take the case to the jury. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678 (1977). On a motion for directed verdict the court must consider the evidence in the light most favorable to the non-movant. This means that the evidence in favor of the non-movant must be taken as true, resolving all conflicts in the non-movant's favor and entitling him to the benefit of all reasonable inferences. *Summey v. Cauthen*, 283 N.C. 640, 197 S.E. 2d 549 (1973). The motion should be denied if there is "any evidence more than a scintilla" sufficient to support plaintiffs' prima facie case. *Cunningham v. Brown*, 62 N.C. App. 239, 240, 302 S.E. 2d 822, 824, *disc. rev. denied*, 308 N.C. 675, 304 S.E. 2d 754 (1983) (quoting *Wallace v. Evans*, 60 N.C. App. 145, 146, 298 S.E. 2d 193, 194 (1982)).

The law of this State is well settled that where land is conveyed by a deed absolute and at the same time an agreement is executed that the grantee will reconvey the property if the grantor pays a sum certain at or before a specified time, the two documents, taken together, may either be a sale with a contract to repurchase or a mortgage. *O'Briant v. Lee*, 214 N.C. 723, 200 S.E. 865 (1939). Whether a particular transaction constitutes a mortgage or a sale with a contract to repurchase depends on the particular facts and circumstances involved, but in all cases, the decision finally turns on the real intention of the parties as disclosed by the writings or extrinsic evidence. *Id.* "A general criterion, however, has been established by an overwhelming concensus [sic] of authorities, which furnishes a sufficient test in the great majority of cases; . . . . This criterion is the continued existence of a debt or liability between the parties, so that the conveyance is in reality intended as a security for the debt." *Id.* at 725-26, 200 S.E. at 867. The debt may exist prior to the conveyance or may arise from a loan made at the time of the conveyance. *Id.* In any event, the debt must not be discharged or satisfied by the conveyance; the grantor should remain bound to pay at some future time. *Id.* It is not merely the existence of the deed and an agreement to reconvey that constitutes the mortgage. "On the contrary, it is absolutely essential that at the incep-

tion of the transaction the deed be intended to operate by way of security." *Id.* at 727, 200 S.E. at 867.

The documents themselves may show, on their face, that they were intended as security. However, if it does not affirmatively appear from the documents that they were intended as security and that fact cannot be reasonably inferred, then our Supreme Court has held that the actual intent of the parties is the controlling criterion in determining the true nature and effect of the documents. *Id.* at 732, 200 S.E. at 871. In establishing this intent, the plaintiff, grantor in the deed, has the right to prove by evidence *dehors* the deed that the transaction was really a mortgage. *Id.* However, the mere declaration of the plaintiff grantor will not be enough to show that the parties intended a mortgage. *Hodges v. Hodges*, 37 N.C. App. 459, 246 S.E. 2d 812 (1978).

> If there was a debt, either antecedent or presently created, the instrument must be construed to constitute a mortgage, unless a contrary intent clearly appears upon the face of the instruments. If this fact does not appear, then the continued possession of the property by the grantor; the inadequacy of the consideration; that the negotiations originated out of an application for a loan; the circumstances surrounding the transaction; and the conduct of the parties before, at, and after the time of the execution of the instruments are some of the circumstances to be considered.

*O'Briant v. Lee, supra* at 733, 200 S.E. at 871.

In the instant case the deed and option to repurchase do not affirmatively show that the parties intended a mortgage. Further, such intent cannot reasonably be inferred from the documents. *O'Briant v. Lee, supra.* Therefore, it was necessary that plaintiffs prove the intent to create a mortgage by proving facts and circumstances *dehors* the deed inconsistent with an absolute conveyance. *Id. See also Ricks v. Batchelor*, 225 N.C. 8, 33 S.E. 2d 68 (1945). When, in response to *O'Briant v. Lee, supra*, we look at the circumstances to be considered in determining actual intent, we find here ample facts and circumstances sufficiently proved to support plaintiffs' claims. First, plaintiffs remained in possession of the property following the conveyance, paying rent to the defendants in the sum of $216.00 per month, an amount equal to the monthly mortgage payments due to Cameron-Brown. Second, as

to the consideration paid, plaintiffs' evidence showed that at the time of conveyance the fair market value of their property was between $42,500 and $46,000. The sales price was $21,000 which included an assumption of the mortgage to Cameron-Brown of approximately $17,000. Further, plaintiffs received only $743.00 cash from the sale. The sales price was not arrived at by determining fair market value but by adding up the costs of the transaction, i.e. mortgage assumption, foreclosure costs, attorney fees, deed preparation and realtor's commission plus an additional $743.00 to the plaintiffs to cover outstanding debts. The price specified for reconveyance was the amount advanced by the defendants plus a profit of $753.00 over the 18-month option period. Third, the transaction began out of negotiations for a loan not a sale. Mr. Rice testified that he requested a loan with a second mortgage and that he at all times wanted to keep his home and not sell it. Mr. Fagerberg testified that Mr. Rice came to him for a loan but that he could not make him a loan and as a result arranged the sale to C & A Associates with an option to repurchase instead. Fourth, the circumstances surrounding the transaction and fifth, the conduct of the parties before, at and after the conveyance reveal that the plaintiffs were in financial distress when they sought the help of Mr. Fagerberg. Foreclosure proceedings had been instituted by Cameron-Brown. Mr. Rice cancelled his pending application for a loan with his credit union as a result of his meeting with Mr. Fagerberg. The house was purchased at less than fair market value. Plaintiffs remained in possession as tenants paying rent equivalent to the mortgage payments. Defendants charged punitive late fees for past due rent in the amount of $20.00 per day. Defendants eventually claimed that plaintiffs had breached the rental agreement and that the option to repurchase was void. Defendants sued plaintiffs in summary ejectment seeking $432.00 in back rent, $612.00 late fees and to have the plaintiffs removed from the premises. Finally, we note that when evidence leaves the status of the transaction in doubt, courts generally hold a deed with an accompanying provision for reconveyance to be a mortgage rather than a conditional sale. *O'Briant v. Lee, supra.*

Looking at the five factors stated by the court in *O'Briant v. Lee, supra,* we find that there was substantial evidence, clearly more than a scintilla, sufficient to support plaintiffs' prima facie

case that the transaction in fact constituted a mortgage and that the trial court properly denied defendants' motion for directed verdict made at the close of all the evidence.

Defendants' primary argument is that the transaction could not be a mortgage because there was no debt created by the transaction since the contract to repurchase was entirely optional with the plaintiffs as to whether they would repurchase their home. This same argument was rejected by the Supreme Court in *O'Briant v. Lee, supra.*

> But the contention is here made that there is no reciprocal obligation resting on the grantors to redeem; that it is entirely optional with them as to whether they shall exercise the right to repurchase within the time stipulated; that it does not appear upon the face of the papers that there is any personal obligation on the part of the grantors to pay the amount of the alleged loan and interest. This is not essential. Evidence of the indebtedness is not required to be in writing. It may be proven by parol. Furthermore, such obligation would only enable the mortgagee to look to the mortgagor for any deficiency remaining after the application of the proceeds of sale of the premises to the payment of the sum secured. In the cases where the question has arisen whether the transaction was one of purchase or of security and the instruments disclosed a debt in the amount of the alleged purchase price and no other sum is paid it has been held that this fact determines conclusively the character to the transaction as a mortgage. [Citations omitted.]

> There may be no independent evidence of the debt—no bond, bill, or note taken for its payment: It may rest wholly on implication from the nature, facts, and circumstances of the transaction; it is sufficient that its evidence is the fair, just implication. . . . Indeed, when the purpose of the creditor is to avoid the appearance of a mortgage (as here alleged), it is not to be expected that he would defeat it by the introduction of an express covenant for the payment of the money or any other independent security disclosing its existence. [Citation omitted.]

*O'Briant v. Lee, supra* at 733, 200 S.E. at 871-72. Accordingly, this assignment is overruled.

II

[2] Defendants next assign error to the jury instructions. Defendants contend, by two separate assignments of error, that the trial court erred in explaining the law as to equitable mortgages and by failing to use defendants' proposed instructions. We agree that the trial court's instructions were fatally defective.

Specifically, defendants argue that the trial court erred in omitting certain factors for the jury to consider in deciding if the transaction constituted a mortgage or conditional sale. Defendants insist that it was prejudicial error for the trial court to exclude the following three factors: (1) did a debt exist between the parties; (2) were the plaintiffs bound to repurchase the property; and (3) the conduct of the parties before, at and after the transaction. We address each factor individually.

We believe the trial court committed prejudicial error by refusing to submit to the jury the factor of whether or not a debt existed between the parties. There can be no mortgage unless and in fact a debt exists between the parties for by definition a mortgage is "an interest in land created by a written instrument providing security for the performance of a duty or the payment of a debt." Black's Law Dictionary 911 (5th ed. 1979). An instrument, irrespective of its form, is a mortgage if intended as security for the payment of a debt and "once a mortgage, always a mortgage." *O'Briant v. Lee, supra* at 725, 200 S.E. at 867.

As we stated earlier, *O'Briant v. Lee* makes it clear that it is absolutely essential that at the inception of the transaction the deed be intended to operate by way of security. This requires the continued existence of a debt or liability between the parties so that the absolute conveyance is in reality intended as security for the debt. *Id.* As explained by our Supreme Court in *Ferguson v. Blanchard*, 220 N.C. 1, 7-8, 16 S.E. 2d 414, 418 (1941):

> Whether any particular transaction amounts to a mortgage or an option of repurchase depends upon the real intention of the parties, as shown on the face of the writings, or by extrinsic evidence, and the distinction seems to be whether the debt existing prior to the conveyance is still left subsisting or has been entirely discharged or satisfied by the conveyance. If no relation whatsoever of debtor and creditor

is left subsisting, the transaction is a sale with contract of re-purchase, since there is no debt to be secured. Pomeroy's Equity Jurisprudence, sec. 1195.

The debt may have existed prior to the conveyance or it may have been created at the time of the transaction. *O'Briant v. Lee, supra.* In either event, a material question to be answered is whether the relationship of debtor and creditor continues to exist after the conveyance? *Hardy v. Neville,* 261 N.C. 454, 135 S.E. 2d 48 (1964). "If the relation of debtor and creditor still continues, equity will regard the transaction as a method of securing a debt — and hence a mortgage." *Ricks v. Batchelor, supra* at 11, 33 S.E. 2d at 70.

While the trial court did instruct the jury that the parties must have intended a mortgage, only three factors were given to the jury for their consideration: (1) the financial situation of the parties, (2) the inadequacy of the consideration, and (3) the fact that plaintiffs remained in possession of the property following the conveyance. The trial court never mentioned the crucial requirement of the creation and continued existence of a debt. We believe this omission constitutes prejudicial error.

We do believe that the trial court properly refused to submit to the jury defendant's second proposed instruction as to whether the plaintiffs were bound to repurchase the property. The document executed by the parties that accompanied the deed clearly gave plaintiffs the *option* to repurchase the property from defendants for $4,790.00 on or before 28 February 1982. An option is a unilateral contract by which the maker grants to the optionee the right to accept or reject a present offer within a limited time. *Lentz v. Lentz,* 5 N.C. App. 309, 168 S.E. 2d 437 (1969). It imposes no obligation to purchase upon the obligee. *Sandlin v. Weaver,* 240 N.C. 703, 83 S.E. 2d 806 (1954). As explained by our Supreme Court in *O'Briant v. Lee, supra,* it is not essential that the documents show that the grantors were personally obligated to pay that amount of the loan and interest. That obligation only enables the mortgagee to look to the mortgagor for any deficiency remaining after application of the sale proceeds to the sum secured. *Id.*

The trial court should also have included defendants' third proposed factor — conduct of the parties before, at and after the

transaction—in his instructions to the jury. This is a proper factor to be considered as explained by the court in *O'Briant v. Lee*. We are mindful of the trial court's instruction that the jury consider the facts and circumstances surrounding the transaction. However, as *O'Briant v. Lee* makes clear, the conduct of the parties is a separate factor for consideration in determining the parties' actual intent.

A jury charge is sufficient if, when it is read contextually, it clearly appears that the law was presented in such a manner that there is no reasonable cause to believe that the jury was misled or misinformed. *Gathings v. Sehorn*, 255 N.C. 503, 121 S.E. 2d 873 (1961). The burden is on the appellant to show not only error but to show that if the error had not occurred there is reasonable probability that the result of the trial would have been favorable to him. *Gregory v. Lynch*, 271 N.C. 198, 155 S.E. 2d 488 (1967). The jury charge as given omitted a critical factor for the jury's consideration in determining the parties' intent. We cannot say that by the instruction given that there is no reasonable cause to believe that the jury was misled. The facts before us present a close factual question and we believe appellants have carried their burden.

We do not pass on appellants' remaining assignments of error which raise the same questions as their first assignment of error. This case will be remanded to the district court for a new trial.

New trial.

Judges ARNOLD and PARKER concur.