THE ESTATE OF BETTY J. GOSNELL, BY AND THROUGH HER ADMINISTRATOR, ELDRIDGE LEAKE v. CLAYTON GOSNELL AND ANGELINE DILLARD

No. 8724SC755

(Filed 19 April 1988)

**Death § 7.6— death of daughter in gun battle—mother's initiation of battle—directed verdict for mother improper**

The trial court in a wrongful death action erred in directing verdict for defendant Dillard where a genuine issue of fact existed as to whether she initiated a gun battle and whether her actions constituted a proximate cause of her daughter's death.

APPEAL by plaintiff from *Lupton, Judge.* Judgment entered 12 March 1987 in Superior Court, MADISON County. Heard in the Court of Appeals 6 January 1988.

Eldridge Leake, administrator of the estate of Betty Jean Gosnell, filed suit against Clayton Gosnell and Angeline Dillard alleging that both defendants were negligent and jointly and severally liable for the wrongful death of Betty Jean Gosnell. Both defendants denied liability and affirmatively pled contributory negligence on the part of decedent. At the conclusion of plaintiff's evidence, both defendants filed motions for directed verdict. The motion as to defendant Gosnell was denied but granted as to defendant Dillard. Plaintiff appeals from the directed verdict in favor of Angeline Dillard.

The evidence presented at trial consisted largely of the conflicting testimony of the two defendants. Viewed in the light most favorable to plaintiff, the evidence tended to show the following.

On 22 May 1980 at approximately 2:00 a.m. Angeline Dillard was sitting in her living room watching television. As she rose to turn off the set she heard a truck "a roaring and a spinning" on the road behind her house. From the sound of its engine, Angeline recognized the truck as that belonging to her son-in-law Clayton Gosnell.

Angeline's thirty-eight-year-old daughter Betty Jean Gosnell had separated from her husband Clayton approximately five weeks earlier. Betty Jean and her two children were living with Angeline. All three were present in Angeline's home that night along with other visitors.

Although Clayton and Betty Jean were separated, the testimony indicated that they were seeing each other on the weekends in an effort to work out their marriage. According to Clayton, Betty Jean asked him to meet her at Angeline's that night. They decided to meet early in the morning because Angeline did not like Clayton.

As Clayton pulled into the driveway, he saw Angeline standing on the porch outside her back door. She shouted "[g]o on buddy boy. Don't want no trouble." As he started to pull out of the driveway, Angeline stepped back into the house and brought out a .22 caliber rifle and started shooting. The porch light was on and Clayton could see Angeline pointing the rifle towards him.

Clayton immediately pulled out of the driveway and swerved his car across the road to avoid colliding with a car coming down

the mountain. As he did so, he observed a white 1965 Fairlane and a green pickup truck in Angeline's driveway. According to Clayton, gunshots were being fired from both of these vehicles. Clayton could not tell from which direction the shots were being fired. The Fairlane and pickup truck backed out of Angeline's driveway and onto the road preventing Clayton from driving away. Shots were still being fired from both vehicles.

Allegedly fearing for his life and unable to drive away, Clayton lay down on the seat of his truck and reached for his .32 caliber pistol. He rolled his window down a few inches and fired two shots. He thought he fired the shots into the air but testified that the bullets may have traveled toward Angeline's house. One of the bullets from Clayton's gun entered Angeline's house killing his wife Betty Jean. After he fired the two shots the shooting stopped and Clayton was able to drive away. Clayton subsequently pled guilty to voluntary manslaughter pursuant to a plea bargain agreement.

*Alley, Hyler, Killian, Kersten, Davis & Smathers, by Patrick U. Smathers, attorney for plaintiff-appellant.*

*Morris, Golding, Phillips & Cloninger, by William C. Morris, III and William C. Morris, Jr., attorneys for defendant-appellee Angeline Dillard.*

ORR, Judge.

On a motion for directed verdict we must consider the evidence in the light most favorable to the non-moving party.

> This means that the evidence in favor of the non-movant must be taken as true, resolving all conflicts in the non-movant's favor and entitling him to the benefit of all reasonable inferences. . . . The motion should be denied if there is 'any evidence more than a scintilla' sufficient to support plaintiffs' prima facie case.

*Rice v. Wood*, 82 N.C. App. 318, 323, 346 S.E. 2d 205, 208, *disc. rev. denied*, 318 N.C. 417, 349 S.E. 2d 599 (1986) (citations omitted).

Here the evidence tends to show that Angeline had reason to believe Clayton would be armed that night. At trial Angeline, her-

self, testified that she knew Clayton was "carrying a gun for me and Betty." On the previous Friday Clayton stopped Betty Jean and her boyfriend in the middle of the road, threatened them at gunpoint, struck the boyfriend in the face and fired a shot from his pistol.

Viewing the evidence, as we must, in the light most favorable to appellant, we are forced to conclude that more than a scintilla of evidence supports appellant's prima facie case. A reasonable jury could find that Angeline initiated the gun battle and could have reasonably foreseen that Clayton would return fire endangering the lives of innocent bystanders.

Admittedly, Angeline Dillard's testimony of what took place that night is substantially different from Clayton Gosnell's. Credibility of witnesses, however, is for the jury to decide and not the trial court. In *Fowler-Barham Ford v. Insurance Co. and Fowler v. Insurance Co.*, 45 N.C. App. 625, 263 S.E. 2d 825, *disc. rev. denied*, 300 N.C. 372, 267 S.E. 2d 675 (1980), this Court stated that:

> it is the established policy of this State—declared in both the Constitution and the statutes—that the credibility of testimony is for the jury, not the court, and that a genuine issue of fact must be tried by a jury unless the right is waived.

45 N.C. App. at 628, 263 S.E. 2d at 827.

We believe a genuine issue of fact exists as to whether Angeline Dillard initiated the gun battle and whether her actions constituted a proximate cause of her daughter's death. We vacate the directed verdict entered by the trial court and remand for a trial on the merits.

Vacated and remanded.

Judges JOHNSON and PHILLIPS concur.