STATE OF NORTH CAROLINA v. JAMES WILLIAM LANE

No. 784SC624

(Filed 5 December 1978)

1. Criminal Law § 45— demonstration of what defendant showed witness—no experimental evidence

   In a prosecution of defendant for murder of his seven month old baby, the trial court properly permitted the police officer to whom defendant had made a statement to demonstrate to the jury the manner in which defendant had shown him he shook the baby without showing substantially similar circumstances, since no experimental evidence was involved, but the witness was merely testifying to what defendant had told and shown him.

2. Criminal Law § 53.1— expert testimony—cause of death—hypothetical question—failure to include all evidence

   In a prosecution of defendant for murder of his seven month old child, the trial court did not err in permitting the State to ask its medical expert a hypothetical question designed to elicit an opinion as to whether defendant's shaking of the child could have caused the hemorrhage which resulted in his death without including any reference to evidence that the baby had fallen from a bed earlier the same day, especially since the State thereafter posed a second hypothetical question concerning causation which included in its hypothesized facts the fall but omitted any references to the shaking, and defendant subjected the medical expert to a searching cross-examination.

3. Criminal Law § 53.1— expert testimony—cause of death—violence in shaking of child

   There was sufficient evidence of violence in the shaking of a seven month old child to form the basis of a medical expert's opinion that a hemorrhage which resulted in the child's death was caused by a "violent" backward and forward motion of the child's head where a police officer's testimony as to what defendant told and showed him tended to show a vigorous shaking of the child by defendant which made the child's head snap back.

4. Criminal Law § 139— involuntary manslaughter—imposition of maximum sentence

   The trial judge did not abuse his discretion in imposing on defendant the maximum sentence of imprisonment for involuntary manslaughter.

APPEAL by defendant from *Small, Judge.* Judgment entered 22 February 1978 in Superior Court, ONSLOW County. Heard in the Court of Appeals 25 October 1978.

Defendant was tried for the second degree murder of his seven months old baby boy. The State presented evidence to show that late on the afternoon of 27 June 1977 the unconscious

baby was taken by ambulance to the hospital. He died on 1 July 1977 after having been maintained on a ventilator for four days with no discernible brain activity or spontaneous respiration present. Autopsy revealed the cause of death as a bilateral subdural hemorrhage.

Defendant told the police that he had returned home from work on 27 June 1977 to find the baby crying. He picked the baby up and shook him. In the course of this shaking, the baby's head snapped back and then fell limp against his chest. After the defendant made unsuccesful attempts to revive the baby, he told his wife to call an ambulance.

Medical experts testified that the bilateral subdural hemorrhage could have been caused by a shaking of the baby. The pathologist who performed the autopsy testified on cross-examination:

At that point [after he had been informed that a shaking had been involved] since the injuries are entirely consistent with a shaking injury and are the sort of injuries that are seen with the shaking of infants at that age I then was able to conclude that the injuries were indeed due to shaking. No sir, it does not exclude all other possibilities. It is just more consistent with the shaking episode.

The defendant did not present evidence. The court allowed defendant's motion for nonsuit as to the charge of second degree murder and submitted the case to the jury on charges of manslaughter and involuntary manslaughter.

The jury found defendant guilty of involuntary manslaughter, and the court sentenced defendant to prison for a term of ten years.

*Attorney General Edmisten by Assistant Attorney General James E. Magner, Jr., for the State.*

*Louis Jordan for defendant appellant.*

PARKER, Judge.

[1]  Defendant first contends that the court erred in overruling his objections and permitting the police officer to whom defendant had made a statement to demonstrate to the jury the man-

ner in which defendant had shown him he shook the baby. Citing *State v. Phillips*, 228 N.C. 595, 46 S.E. 2d 720 (1948) for the proposition that experimental evidence is competent only when the experiment is carried out under substantially similar circumstances, defendant contends that the police officer, who was a larger individual than the defendant, should not have been permitted to make the demonstration before the jury. Defendant's reliance upon *State v. Phillips, supra,* is misplaced. No experimental evidence was involved here. The witness was merely testifying to what the defendant had told and shown him concerning the manner in which he shook his baby. In so testifying it was entirely proper for the witness not only to repeat before the jury the substance of the words which defendant had used in making his statement but also to show the jury the physical actions which defendant had used while making his statement. The court did not err in overruling defendant's objections to the officer's testimony.

[2]   The defendant next contends that the trial court erred in overruling his objection to a hypothetical question asked of one of the medical expert witnesses, Dr. Zumwalt, the pathologist who had performed the autopsy which established the cause of the child's death as a bilateral subdural hemorrhage. The hypothetical question was designed by the State to elicit the medical expert's opinion as to whether the shaking could have caused the bilateral subdural hemorrhage. The defendant contends that his objection to the hypothetical question should have been sustained because the question did not include any reference to a fall from bed which the child had suffered earlier in the afternoon of 27 June 1977 according to a statement made by defendant to the police.

This contention of the defendant is without merit. The medical expert answered the question excepted to and then explained his answer. Immediately thereafter, the State posed a second hypothetical question concerning causation which included in its hypothesized facts the fall but omitted any reference to the shaking. In the clearest fashion possible the State thus set forth the opposing contentions as to causation. The defendant was given full benefit of a hypothetical question centered on his contentions and cannot now justly complain of the earlier question which was based on the State's theory of causation. Futhermore, the defendant received additional protection in the form of

vigorous cross-examination of the medical expert witness. This was yet another safeguard against any distortion of the opinion evidence adduced by the hypothetical question to which defendant excepted. As Justice Branch pointed out in *State v. Taylor,* 290 N.C. 220, 226 S.E. 2d 23 (1976):

> The general rule is that a hypothetical question which omits any reference to a fact which goes to the essence of the case and therefore presents a state of facts so incomplete that an opinion based on it would be obviously unreliable is improper and the expert's answer to such a question will be excluded. However, it is not necessary to include in the hypothetical question all the evidence bearing upon the fact to be proved. The adversary has the right to present other phases of the evidence in counter-hypothetical questions so as to supply omitted facts and to ask the expert on cross-examination if his opinion would have been modified by the inclusion of such omitted facts. *Dean v. Coach Co.,* 287 N.C. 515, 215 S.E. 2d 89; *State v. Stewart,* 156 N.C. 636, 72 S.E. 193.

290 N.C. at 230, 226 S.E. 2d at 28-29.

In the present case, the State itself presented another phase of the evidence in a counter-hypothetical question, and the defendant was able to subject the expert to a searching cross-examination.

[3] The defendant also assigns error to the trial court's denial of his motion to strike Dr. Zumwalt's explanation of the basis of his opinion that the hemorrhage was caused by shaking. Dr. Zumwalt testified that if the head of an infant of seven months "is violently moved backward and forward in a whiplash fashion, the brain moves back and forth and in relation to the cranial vault." The defendant argues that his motion to strike should have been granted because there was no evidence that a violent shaking occurred. We do not agree, and accordingly find no error. First, we point out that the defendant made a broadside motion to strike without specifying which portion of Dr. Zumwalt's answer was objectionable. The defendant does not question the competence of anything in Dr. Zumwalt's answer other than the reference to violence in the shaking. Where only a portion of a witness's testimony is incompetent, and we do not find that any of it was

incompetent as we will discuss below, the party moving to strike should specify the objectionable part and move to strike it alone. *State v. Pope*, 287 N.C. 505, 215 S.E. 2d 139 (1975); *State v. Williams*, 274 N.C. 328, 163 S.E. 2d 353 (1968). The trial court may, in its discretion, strike the incompetent testimony, but it is under no duty to winnow out the bad from the good. Accordingly, the trial court will ordinarily overrule a broadside motion to strike if part of the testimony at which the motion is directed is competent. *State v. Pope, supra.* Second, in this case we find that ample evidence had been presented about violence in the shaking to form the basis of Dr. Zumwalt's testimony. Sgt. Sennec related on direct examination the account given to him by defendant of the shaking:

> He put his hands in a manner like this, he put his hands under the child's armpits and shook him hard.

> \*    \*    \*

> I said, "how hard"? He said hard enough to change the pitch of his voice, ah-ah-ah, like that. His head snapped back.

On cross-examination, Sgt. Sennec said:

> In my opinion the illustration I gave of the vigorous shaking is the way Mr. Lane demonstrated it.

Taken together, this testimony of Sgt. Sennec tends to show a vigorous shaking which made the infant's head snap back. This evidence was sufficient to permit Dr. Zumwalt to testify in terms of a violent backward and forward motion of the child's head. Defendant's assignment of error directed to the denial of his motion to strike Dr. Zumwalt's testimony is overruled. Furthermore, this same analysis of the evidence as to violence of the shaking leads us to overrule the defendant's assignment of error directed to the trial court's allusion to violent shaking in its summary of the State's evidence.

[4] Finally, the defendant assigns error to entry of the judgment, contending that the court erred by considering irrelevant testimony at the sentencing hearing and by imposing the maximum sentence of imprisonment for involuntary manslaughter. Again, we do not agree and find no error. "Formal rules of evidence do not apply at the [sentencing] hearing." G.S.

15A-1334(b). "It suffices to say that trial judges have a broad discretion, and properly so, in making a judgment as to proper punishment. They must not be hampered in the performance of that duty by unwise restrictive procedures." *State v. Locklear,* 294 N.C. 210, 213, 241 S.E. 2d 65, 67 (1978). "A judgment will not be disturbed because of sentencing procedures unless there is a showing of abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play." *State v. Pope,* 257 N.C. 326, 335, 126 S.E. 2d 126, 133 (1962). No such showing has been made in this case. Defendant's final assignment of error is overruled.

In defendant's trial and in the judgment imposed we find

No error.

Chief Judge BROCK and Judge HEDRICK concur.