STATE OF NORTH CAROLINA v. GEORGE HUGGINS

No. 8310SC1288

(Filed 6 November 1984)

1. **Homicide § 21.7 — second degree murder of a child — malice — sufficiency of the evidence**

There was sufficient evidence of second degree murder to submit the charge to the jury and to support a conviction where defendant, a mature adult, intentionally struck a two and one-half year old child with a clenched fist as hard as one would hit an adult, thereby inflicting the proximate cause of the child's death. A sustained attack or pattern of abuse is not necessary to establish malice.

2. **Homicide § 30.3 — involuntary manslaughter — instruction on criminal negligence not required**

Defendant was not entitled to a jury instruction on involuntary manslaughter based on criminal negligence where defendant's own testimony showed that he struck a child intentionally, and where the court instructed the jury on involuntary manslaughter based on an unintentional killing by an unlawful act not amounting to a felony.

APPEAL by defendant from *Bowen, Wiley, Judge.* Judgment entered 16 June 1983 in WAKE County Superior Court. Heard in the Court of Appeals 18 September 1984.

Defendant was indicted on 3 May 1982 for first degree murder in connection with the death of Leon Jermaine Stroud, age approximately two and one-half years, on 8 March 1982. The State proceeded upon second degree murder at trial. Defendant entered a plea of not guilty, was found guilty by the jury, and sentenced to 20 years imprisonment.

The State's evidence at trial tended to show that defendant had lived with Jeanette Stroud and her two children, Jermaine and Brandon Stroud, since July 1981. At approximately 11:30 a.m. on 8 March 1982, Barbara Moore, co-owner of the trailer park in which defendant resided, arrived at the trailer park and heard a loud noise. After entering the manager's office she heard noises again that sounded "like somebody fighting. It sounded like two people were pushing and shoving." Moore walked out of the office and determined that the noise was coming from defendant's unit and heard defendant "yelling" as she walked toward the unit. As Moore approached the unit, defendant ran outside toward another

trailer stating that Jermaine was sick and he needed to get him to the hospital. Moore transported defendant and Jermaine to North Wake Hospital while defendant performed cardiopulmonary resuscitation on Jermaine.

Dr. James R. Mosley, Jermaine's attending physician at North Wake Hospital and Medical Examiner, thought Jermaine had a heartbeat upon arrival at the hospital, but no voluntary respiration. Jermaine died at approximately 12:30 p.m. Dr. Mosley questioned defendant as to the cause of Jermaine's injuries. Defendant recounted that he had been at the mailbox outside the home; that he reentered and discovered the child in the bathroom banging his head against the wall; and that the child fell on the floor, was without respiration, and defendant began mouth-to-mouth breathing.

In Dr. Mosley's expert medical opinion, Jermaine died of massive internal bleeding of the mesentery, right adrenal gland, small bowel, right lung and thymus resulting from a blunt trauma of substantial force. He stated that such force would be inconsistent with spontaneous hemorrhaging or cardiopulmonary resuscitation.

Dr. James R. Edwards, pathologist, performed an autopsy on the deceased child. His pertinent findings were that Jermaine suffered from three areas of trauma: (1) acute hemorrhage of the mesentery, right adrenal gland, small bowel, (2) right lung and thymus, and (3) cranial hemorrhaging on the top of the head. In Dr. Edwards' opinion, the cranial injury was caused by a mild to moderate amount of force and the injuries in the abdominal area were from moderate to severe force. Such injuries were inconsistent with an accidental injury. Dr. Edwards' diagnosis was that a "high index of suspicion of child abuse" caused the trauma and subsequent shock that killed the deceased.

Officer Kenneth G. Hensley, investigator with the Wake County Sheriff's Department, interviewed defendant concerning Jermaine's death. Defendant stated to him that he went a short distance outside the house for approximately fifteen minutes and was certain that no one else could have entered the unit during his absence. When defendant returned he discovered Jermaine on the bathroom floor having an apparent "fit" and began giving mouth-to-mouth resuscitation. Defendant stated that he had never

spanked Jermaine with anything but his hand and had not struck or thrown him.

At the close of the State's evidence, defendant moved that the charge of second degree murder be dismissed. The motion was denied.

Jeanette Stroud, Jermaine's mother, testified for defendant. She stated that she and defendant lived together, defendant acted as a father to her children, and he had a good relationship with them. Her relationship with defendant was good before Jermaine's death and afterwards. On cross examination, Stroud stated that on 24 December 1981 defendant had bit the lip of her son, Brandon, with sufficient force to produce bleeding and subsequent swelling. She further testified that on one previous occasion defendant spanked the deceased for soiling his britches with such force as to leave marks on the buttocks.

Defendant testified in his own behalf that he had lived with Stroud, acted as a parent to the minor children, and had a caring relationship to both. As to the incident on 8 March 1982, he stated that Jermaine had soiled himself and that he had unbuttoned the child's pants and instructed him to go to the bathroom to clean himself. Defendant stepped outside to check his mailbox, entered into a discussion with a neighbor, checked the mailbox and returned inside. He stated:

> So . . . I . . . walked through the living room to the bathroom, and . . . Jermaine was standing up and he had his hand pressed against the wall . . . and he turned around and looked at me and I don't know what happened, I exploded or whatever, but I hit Jermaine in the stomach and when I did, his legs went out from under him and he came down on his neck and back of his head.

Defendant described the force of the one blow with a clenched fist as "fairly hard" and "as hard as you would hit a grown man." Defendant attempted to resuscitate Jermaine, and with Barbara Moore transported Jermaine to the hospital.

At the close of all the evidence, defendant renewed his motion to dismiss. The motion was denied. The trial judge instructed the jury on second degree murder and involuntary manslaughter

based upon doing a lawful act in an unlawful manner not amounting to a felony. Defendant was convicted and appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Wilson Hayman, for the State.*

*Purser, Cheshire, Manning & Parker, by Joseph B. Cheshire, V, and Barbara A. Smith, for defendant.*

WELLS, Judge.

Defendant assigns error to the trial court in denying his motion to dismiss the charge of second degree murder because the evidence was insufficient and refusing to instruct the jury on the lesser included offense of involuntary manslaughter based on criminal negligence. We have reviewed defendant's assignments of error and find no error in defendant's trial.

[1]  Defendant first contends that his motion to dismiss the second degree murder charge was improperly denied. He argues that the evidence does not support the essential element of malice required in second degree murder.

The rule by which the motion to dismiss must be evaluated by the trial court is well settled. It is:

> The question for the court in ruling upon defendant's motion for dismissal is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If substantial evidence of both of the above has been presented at trial, the motion is properly denied. . . . In considering a motion to dismiss, the evidence must be considered in the light most favorable to the State and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. . . . Contradictions and discrepancies in the evidence are strictly for the jury to decide. . . .

*State v. Lowery,* 309 N.C. 763, 309 S.E. 2d 232 (1983) (citations omitted).

The court must also consider defendant's evidence which explains or clarifies that offered by the state. *State v. Blizzard,* 280 N.C. 11, 184 S.E. 2d 851 (1971); *State v. Bruton,* 264 N.C. 488, 142

S.E. 2d 169 (1965). It must consider defendant's evidence which negates an inference of guilt if it is consistent with the State's evidence. *State v. Bates*, 309 N.C. 528, 308 S.E. 2d 258 (1983).

Second degree murder is the unlawful killing of a human being with malice but without premeditation and deliberation. *State v. Wrenn*, 279 N.C. 676, 185 S.E. 2d 129 (1971). Malice may be either express or implied. *Id.* It may be implied when there is:

> [A]ny act evidencing "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty and deliberately bent on mischief, though there may be no intention to injure a particular person" is sufficient to supply the malice necessary for second degree murder. Such an act will always be accompanied by a general intent to do the act itself but it need not be accompanied by a specific intent to accomplish any particular purpose or do any particular thing.

*State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978) (quoting Sharp, C.J., dissenting in *State v. Wrenn, supra*).

Applying the above rules to this case, we hold that there was ample evidence to support the trial court submitting second degree murder to the jury and to support defendant's conviction. Defendant, a healthy adult male, admitted intentionally striking the deceased, an approximately two and one-half year old child, with a clenched fist as hard as one would hit an adult. Dr. Edwards testified that this trauma, resulting in massive internal bleeding and shock, was the proximate cause of Jermaine's death. The law in this state is that ordinarily:

> [I]n a fight between men, the fist . . . would not . . . be regarded as endangering life or limb. But it is manifest, that a wilful blow with the fist of a strong man, on the head of an infant, or the stamping on its chest, producing death, would import malice from the nature of the injury, likely to ensue.

*State v. West*, 51 N.C. 505 (1859); *see also State v. Lang*, 309 N.C. 512, 308 S.E. 2d 317 (1983); *State v. Sallie*, 13 N.C. App. 499, 186 S.E. 2d 667, *cert. denied*, 281 N.C. 316, 188 S.E. 2d 900 (1972).

Defendant argues that in order to find malice there must have been a sustained attack or pattern of abuse, relying on,

among others, *State v. Stinson*, 297 N.C. 168, 254 S.E. 2d 23 (1979); *State v. Smith*, 61 N.C. App. 52, 300 S.E. 2d 403 (1983); and *State v. Sallie, supra.* These cases certainly establish that a sustained attack of short duration or sustained abuse, medically denoted as "battered child syndrome," that proximately causes death support a finding of malice. These cases, however, do not establish a minimum standard by which malice must be judged. We hold that where, nothing else appearing, a mature adult intentionally inflicts a blow or blows of such force on an infant which proximately causes death, such evidence is sufficient to establish the element of malice in second degree murder. This assignment of error is overruled.

[2] Defendant next contends that "the trial court erred in refusing to instruct the jury that they could find the defendant guilty of the lesser included offense of involuntary manslaughter if they found from the evidence that the defendant acted in a criminally negligent way and that such criminally negligent act proximately caused the victim's death." The trial court submitted to the jury the lesser included offense of involuntary manslaughter, instructing the jury:

Involuntary manslaughter is the unintentional killing of a human being by an unlawful act not amounting to a felony.

The trial court refused defendant's request that the remaining portion of the pattern jury instruction on involuntary manslaughter, providing that criminal negligence resulting in death may constitute involuntary manslaughter, be submitted to the jury and criminal negligence defined.

It is well established that the trial court must instruct the jury on all lesser included offenses of the crime charged when sufficient evidence exists from which the jury could find that offense was committed. *State v. Gerald*, 304 N.C. 511, 284 S.E. 2d 312 (1981); *see also State v. Redfern*, 291 N.C. 319, 230 S.E. 2d 152 (1976).

Involuntary manslaughter has been defined as the "unlawful killing of a human being without malice, without premeditation and deliberation, *and without intention to kill or inflict serious bodily injury.*" *State v. Wrenn, supra* (emphasis in original); *see also State v. Gerald, supra.* This crime arises under facts of an

"unintentional killing of a human being without either express or implied malice (1) by some unlawful act not amounting to a felony or naturally dangerous to human life, or (2) by an act or omission constituting culpable negligence." *State v. Wilkerson, supra* (quoting *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889 (1963)). Defendant's own testimony shows conclusively that defendant struck Jermaine *intentionally*, albeit out of rage or temper. Such an intentional criminal act raised no issues of criminal negligence, and thus defendant was not entitled to have the jury consider a verdict based on his negligence. *See State v. Wilkerson, supra.* This assignment is overruled.

No error.

Judges ARNOLD and HILL concur.