STATE OF NORTH CAROLINA v. STEPHEN ANDRE HEMPHILL

No. 9029SC791

(Filed 5 November 1991)

**Homicide § 21.7 (NCI3d) — shaken baby syndrome — second degree murder — evidence sufficient**

The trial court did not err by denying defendant's motion to dismiss the charge of second degree murder of his four-month-old daughter where there was evidence that defendant shook the baby and expert testimony that the cause of death was shaken baby syndrome, which typically results from an infant's head being held and shaken so violently that the brain is shaken inside the skull causing bruising and tearing of blood vessels on the surface of and inside the brain.

**Am Jur 2d, Homicide §§ 85, 398, 434.5.**

Judge GREENE dissenting.

APPEAL by defendant from *Owens (Hollis M., Jr.), Judge*. Judgment entered 17 January 1990 in Superior Court, TRANSYLVANIA County. Heard in the Court of Appeals 23 September 1991.

Defendant was charged with second degree murder for the death of defendant's four month old daughter, Kala Marie Hemphill. Evidence presented by the State tends to show the following: At approximately 3:50 on the afternoon of 20 April 1989 defendant brought his daughter to be examined by her pediatrician, Dr. Ora Wells. The examination revealed that the baby was dead, and Dr. Wells stated that in his opinion the child had been dead for three to four hours. Dr. William Dunn, a medical examiner in Henderson

STATE v. HEMPHILL

[104 N.C. App. 431 (1991)]

County, performed an autopsy on the body of Kala Hemphill on 21 April 1989. His examination revealed swelling of the infant's brain, bleeding into the skull around the brain substance, bruises on the brain and hemorrhage in the lungs. The bruises were on the frontal parts of the brain and on the back of the brain. Dunn stated that the bleeding in the lungs was caused by the injury to the brain.

Dr. Dunn testified that he considered such injuries to be severe, and that he believed the cause of death was "Shaken Baby Syndrome," which is an injury resulting from the brain being shaken inside of the skull in such a violent or vigorous manner that it tears blood vessels inside the brain and on the surface of the brain, between the brain and its coverings. Dr. Dunn testified that the injury typically occurs when an infant's head is shaken violently while being held so that the skull itself is maintained within the person's grasp and the brain is shaken inside the head. He stated that vigorous shaking would be required to produce the sort of injury he observed in his autopsy of the victim.

Dr. Dunn indicated that one of the results of the increased intercranial pressure resulting from the swelling of the brain was typically vomiting, and that he had found evidence that this child had breathed some aspirated gastric material down into her lungs. He testified that the victim was alive when the aspiration occurred, although he could not tell if the baby had aspirated prior or subsequent to being shaken, but that the conditions he observed about the child's brain and lungs was consistent with an intentional violent repeated shaking, and that the child had died as a result of "Shaken Baby Syndrome."

Tim Shook, a special agent with the North Carolina State Bureau of Investigation, testified that he took a statement from defendant at 3:16 p.m. on 21 April 1989. Defendant stated that he had fed Kala at about 2:00 p.m. on the date of her death, and that she seemed fine. He further stated that when he checked on her about 3:20 p.m., that she had vomited and was not breathing. He then took the child to Transylvania Community Hospital where she was pronounced dead.

Agent Shook further testified that he took another statement from defendant at 5:16 p.m. on 21 April 1989, after informing defendant that the cause of death was "Shaken Baby Syndrome." In this second statement, defendant recalled that he had shaken

the child about four times around 11:30 a.m. on 20 April 1989 because she was throwing up and he thought she was choking. Shook testified that defendant had not mentioned shaking the child in his first statement.

Defendant testified at trial that he had shaken the child because she was choking, and that "I might have shook her too hard and I might have shook her too much but I shook her, but after I shook her, she was all right." Defendant also testified that he did not intentionally injure his daughter and denied shaking her by her head. Defendant also offered character testimony that he was kind and gentle to children.

Defendant was found guilty of second degree murder and appealed from a judgment imposing a sentence of thirty-five years.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General John F. Maddrey, for the State.*

*Horton and Horton, by Shelby E. Horton, for defendant, appellant.*

HEDRICK, Chief Judge.

Defendant's one assignment of error is that the trial court erred in denying his motion to dismiss the charge of second degree murder. He argues that the evidence is insufficient to support a finding of the element of malice.

In *State v. Wilkerson*, 295 N.C. 559, 247 S.E.2d 905 (1978), our Supreme Court defined malice as follows:

[I]t comprehends not only particular animosity 'but also wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty and deliberately bent on mischief, though there may be no intention to injure a particular person.'

This Court has said that '[m]alice does not necessarily mean an actual intent to take human life; it may be inferential or implied, instead of positive, as when an act which imports danger to another is done so recklessly or wantonly as to manifest depravity of mind and disregard of human life.' In such a situation 'the law regards the circumstances of the act as so

harmful that the law punishes the act as though malice did in fact exist.'

295 N.C. at 578-579, 247 S.E.2d at 916 (citations omitted).

We hold the evidence in the present case is sufficient to support a finding by the jury that defendant acted with malice as defined by *Wilkerson.* The evidence that defendant shook the baby as well as the expert testimony that the cause of death was "Shaken Baby Syndrome," which typically results from an infant's head being held and shaken so violently that the brain is shaken inside the skull causing bruising and tearing of blood vessels on the surface of and inside the brain, is sufficient to show that defendant acted with "recklessness of consequences, . . . though there may be no intention to injure a particular person."

We hold the trial court properly denied defendant's motion to dismiss the charge of second degree murder, and that defendant had a fair trial free from prejudicial error.

No error.

Judge EAGLES concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I disagree with the majority's conclusion that the evidence is sufficient to support a finding that the defendant acted with "recklessness of consequences" and therefore with malice.

"When a defendant moves for dismissal; the trial court is to determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Vause,* 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). "Whether evidence presented constitutes substantial evidence is a question of law for the court." *Id.* On a motion to dismiss,

'the evidence for the State is taken to be true, conflicts and discrepancies therein are resolved in the State's favor and it is entitled to every reasonable inference which may be drawn from the evidence.'. . . 'All of the evidence actually admitted,

whether competent or incompetent, which is favorable to the State is considered by the Court in ruling upon the motion.'

*State v. Mize*, 315 N.C. 285, 290, 337 S.E.2d 562, 565 (1985) (citations omitted).

The evidence on the malice element of the second degree murder charge tends to show that the baby's death was caused by "Shaken Baby Syndrome," the "intentional violent repeated shaking" of the baby. As part of its case, the State introduced the defendant's two statements that he made to the police on 21 April 1989. In his second statement, the defendant stated that at approximately 11:30 a.m. on 20 April 1989, the baby was throwing up, and because he was scared and thought she was choking, he shook the baby hard about four times to try to clear her airway. This evidence is uncontradicted and must be taken as true. *Mize*, 315 N.C. at 290, 337 S.E.2d at 565. Indeed, the State's expert testimony tends to show that the baby died from intentional violent repeated shaking. Accordingly, the issue becomes whether the evidence, viewed in the light most favorable to the State, is sufficient to support a finding that the defendant acted with "recklessness of consequences" and therefore malice.

According to our Supreme Court,

any act evidencing 'wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty and deliberately bent on mischief, though there may be no intention to injure a particular person' is sufficient to supply the malice necessary for second degree murder.

. . . .

An act that indicates a total disregard for human life is sufficient to supply the malice necessary to support the crime of second degree murder.

*State v. Wilkerson*, 295 N.C. 559, 581, 247 S.E.2d 905, 917-18 (1978) (citation omitted). The evidence from the defendant's statement does not show wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, a mind regardless of social duty and deliberately bent on mischief, or total disregard for human life. To the contrary, the evidence tends to show a person who, fearing for the welfare of his child, made a very poor decision about how to handle his child's apparent choking. Furthermore, the uncon-

STATE v. HEMPHILL

[104 N.C. App. 431 (1991)]

tradicted evidence shows that once the defendant realized that his child had stopped breathing, he took her to the hospital, and after learning that she was dead, "he was beside himself with grief" and requested that an autopsy be performed on her. His conduct may rise to the level of culpable negligence for a conviction of involuntary manslaughter, but it does not amount to second degree murder. *See Wilkerson*, 295 N.C. at 579-80, 247 S.E.2d at 916-17; *see also State v. Evans*, 74 N.C. App. 31, 327 S.E.2d 638 (1985), *aff'd per curiam*, 317 N.C. 326, 345 S.E.2d 193 (1986) (defendant charged with and convicted of involuntary manslaughter for death by violent shaking of two-year-old child); *State v. Lane*, 39 N.C. App. 33, 249 S.E.2d 449 (1978) (defendant charged with second degree murder, defendant's motion to dismiss allowed as to second degree murder, and defendant convicted of involuntary manslaughter for death by violent shaking of his seven-month-old baby); *State v. Ojeda*, 810 P.2d 1148 (Idaho Ct. App. 1991) (defendant charged with and convicted of involuntary manslaughter for death by violent shaking of three-month-old baby); *Commonwealth v. Earnest*, 563 A.2d 158 (Pa. Super. Ct. 1989) (defendant convicted of involuntary manslaughter for death by striking and shaking fifteen-month-old child). *Cf. State v. Crawford*, 329 N.C. 466, 406 S.E.2d 579 (1991) (defendant convicted of first degree murder for death by torture of six-year-old child); *State v. Huggins*, 71 N.C. App. 63, 67, 321 S.E.2d 584, 587 (1984), *disc. rev. denied*, 313 N.C. 333, 327 S.E.2d 895 (1985) (charged with first degree murder, defendant was tried on and convicted of second degree murder for death by intentionally striking a two and one-half year old child in the abdomen "as hard as one would hit an adult"); *State v. Mapp*, 45 N.C. App. 574, 264 S.E.2d 348 (1980) (defendant charged with and convicted of second degree murder for death of five-year-old child, the victim of "battered child syndrome"); *State v. Sallie*, 13 N.C. App. 499, 186 S.E.2d 667, *cert. denied*, 281 N.C. 316, 188 S.E.2d 900 (1972) (defendant charged with first degree murder and convicted of second degree murder for death by severe blow to abdomen of three-year-old child, the victim of horrible abuse for period of time prior to death). Because there was no substantial evidence tending to support a determination of malice, the trial court should have allowed the defendant's motion to dismiss the charge of second degree murder. Accordingly, I would grant the defendant a new trial.

I dissent.