STATE OF NORTH CAROLINA v. MATTHEW THOMAS RICH

No. COA98-500

(Filed 2 March 1999)

1. Homicide— instructions—malice

The trial court did not err in a prosecution for second-degree murder by instructing the jury that the malice necessary for second-degree murder could be supplied by one, some, or all of wickedness of disposition, hardness of heart, cruelty, reckless-ness of consequences, and a mind regardless of social duty and deliberately bent on mischief.

2. Homicide— instructions—deliberately bent on mischief

The trial court did not err in a second-degree murder prose-cution in its instruction on malice in its definition of "deliberately bent on mischief." In the context of the entire instruction, the charge correctly conveyed to the jury that it could infer malice if it found that the acts of defendant "manifest depravity of mind and disregard of human life."

3. Criminal Law— instructions—additional—counsel not heard

There was no prejudicial error in a second-degree murder prosecution where defendant contended that the court violated N.C.G.S. § 15A-1234(c) by giving additional instructions without first allowing counsel an opportunity to be heard, but the chal-lenged instruction constituted a clarification and the court was not required to inform the parties or afford them an opportunity to be heard. Moreover, in light of the holding elsewhere that the

instructions were correct, defendant failed to show that he was prejudiced by the alleged omission.

**4. Evidence— lay opinion—experienced law enforcement officer—defendant impaired**

The trial court did not err in a second-degree murder prosecution by allowing an officer to testify that, in his opinion, defendant was impaired and unable to drive. The opinion was based on the officer's experience as a law enforcement officer in conjunction with his observation of the circumstances surrounding the collision.

**5. Evidence— prior crime or act—malice—prior traffic offenses**

The trial court did not err in a second-degree murder prosecution arising from speeding and drinking by admitting defendant's prior traffic violations to substantiate malice. Evidence of defendant's prior violations was relevant to establish defendant's "depraved heart" on the night he struck the victims' vehicle while rounding a sharp curve at a speed at least forty miles per hour over the posted limit.

**6. Evidence— medical records—district court judge—disclosure—no prejudice**

There was no prejudice in a second-degree murder prosecution arising from an automobile accident where an order compelling disclosure of defendant's medical records (including a statement to a doctor that he had drunk several shots and several beers) was issued by a district court judge rather than a superior court judge. While the order should have come from a superior court judge, there was no reasonable possibility of the jury reaching a different result in view of the overwhelming evidence that defendant had a strong odor of alcohol on his breath on the night in question.

**7. Homicide— second-degree murder—malice—sufficiency of evidence**

The trial court did not err in a second-degree murder prosecution arising from an automobile accident by failing to dismiss the charges for insufficient evidence of malice where, viewed in the light most favorable to the State, the evidence tended to show that defendant had a history of driving at speeds far in excess of the posted limits and that defendant entered a sharp curve with a

speed limit of 35 mph at a speed in excess of 70 mph while under the influence of alcohol, colliding head-on with an oncoming vehicle and causing the deaths of two people.

**8. Sentencing— structured—mitigating factors not found— sentence within presumptive range**

The trial court did not err when sentencing defendant for second-degree murder by failing to find any factors in mitigation where the sentences were within the presumptive range. The trial court is not obligated to make findings regarding aggravating and mitigating factors where the court imposes sentences within the presumptive range for all offenses.

Appeal by defendant from judgments entered 25 September 1997 by Judge W. Douglas Albright in Guilford County Superior Court. Heard in the Court of Appeals 13 January 1999.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Isaac T. Avery, III, for the State.*

*J. Donald Cowan and Shannon R. Joseph for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Matthew Thomas Rich ("defendant") was convicted of two counts of second-degree murder and was sentenced to two consecutive prison terms of 132-168 months. For the reasons stated herein, we uphold the convictions rendered and the sentences imposed.

The State's evidence at trial tended to show the following facts: At approximately 10:15 p.m. on 29 November 1996, Todd Allan Bush and James Brady Litrell were traveling on Horse Pen Creek in Greensboro, North Carolina, when their vehicle was struck head-on by defendant's car. The collision occurred at a sharp curve in the road where the speed limit was 35 miles per hour ("mph"). The two-lane stretch of road leading up to the curve was a no-passing zone with a speed limit of 40 mph. Nonetheless, seconds before colliding with Bush and Litrell, defendant passed the vehicle traveling ahead of him and entered the curve at a speed in excess of 70 mph. Bush and Litrell died as a result of the collision.

Officer L. E. Farrington of the Greensboro Police Department arrived at the scene shortly after the collision occurred and noted a strong odor of alcohol on defendant's breath. Karrina Crews, a mem-

ber of the EMS team that responded to the accident, testified that she also detected a strong odor of alcohol on defendant as she and the other paramedics removed him from his vehicle. Crews further testified that defendant was verbally abusive and combative with the paramedics while they attended to his medical needs. The EMS team transported defendant to Moses Cone Hospital for treatment of his injuries. The treating physician, Dr. Kai-Uwe Mazur, asked defendant a series of questions to determine his general physical condition. When Dr. Mazur asked defendant whether he drank alcohol, defendant admitted that he frequently drank alcohol and that on the night of the accident, he drank "several beers and several shots." Dr. Mazur noted this statement in defendant's medical records.

Officer Gerald Austin interviewed defendant at the hospital at 11:35 p.m. Officer Austin reported a moderate to strong odor of alcohol on defendant's person. The officer further noted that defendant's eyes were bloodshot and watery and that defendant had trouble focusing on him during the interview. Based on these observations, Officer Austin formulated the opinion that defendant was appreciably impaired and "unfit to operate machinery or equipment of any type." Nothing in the record, however, indicates that a blood alcohol test was administered to defendant on the night of the accident.

The State also presented evidence of defendant's prior driving record. This evidence disclosed that defendant was convicted of the following traffic violations: driving 75 mph in a 45 mph zone on 3 October 1988; driving 76 mph in a 45 mph zone on 6 September 1990; reckless driving and fleeing to elude arrest on 3 October 1991; driving 70 mph in a 35 mph zone on 11 August 1995; and driving 70 mph in a 55 mph zone on 11 May 1994.

At the conclusion of the State's evidence, defendant moved to dismiss the second-degree murder charges, and the trial judge denied the motion. Thereafter, the court charged the jury on second-degree murder and involuntary manslaughter, emphasizing that the element of malice distinguished the two offenses. The court gave the following instruction regarding malice:

Now, members of the jury, our courts have defined malice, and our courts have declared that there are three kinds of malice in our law of homicide. One kind of malice connotes a possible concept of express hatred, ill will, or spite. This is sometimes called actual, express, or particular malice. Another kind of malice arises when an act which is inherently dangerous to human

life is done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief. And there is, in addition, a third kind of malice which is defined as nothing more than that condition of mind which prompts a person to take the life of another intentionally, without just cause, excuse, or justification.

With regard to the second kind of malice, the court further instructed that "any act evidencing wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty and deliberately bent on mischief, though there may be no intention to injure a particular person, is sufficient to supply the malice necessary for second degree murder."

After less than an hour of deliberation, the jury returned to the courtroom and requested that the court review the definitions of malice. The court complied, and the jury resumed its deliberation. Several hours later, however, the jury again returned to the courtroom and asked the court to address specific questions regarding the concept of "deliberately bent on mischief." The court gave the jury further guidance as to the meaning of the phrase, and after additional deliberation, the jury returned verdicts finding defendant guilty of both counts of second-degree murder. The court sentenced defendant to two consecutive prison terms, totaling approximately 22-28 years. Defendant appeals.

Defendant brings forward several assignments of error challenging the trial court's instructions to the jury, its evidentiary rulings, its failure to dismiss the charges of second-degree murder, and its sentencing decision. Having reviewed defendant's arguments, we conclude that the proceedings before the trial court were without legal error.

[1] At the outset, defendant argues that the trial court erred in instructing the jury on the element of malice essential to support a conviction of second-degree murder. Upon review of a trial court's charge to the jury, we must determine whether, considering the instruction in its entirety, "it clearly appears that the law was presented in such a manner that there is no reasonable cause to believe that the jury was misled or misinformed." *Rice v. Wood*, 82 N.C. App. 318, 329, 346 S.E.2d 205, 212 (1986). The appealing party must demonstrate not only that the court erred in its instructions, but "that if the error had not occurred there is a reasonable probability that the result of the trial would have been favorable to him." *Id.*

Second-degree murder is defined under section 14-17 of the North Carolina General Statutes as the " 'unlawful killing of a human being with malice, but without premeditation or deliberation.' " *State v. Mapp*, 45 N.C. App. 574, 579, 264 S.E.2d 348, 353 (1980) (quoting *State v. Duboise*, 279 N.C. 73, 81, 181 S.E.2d 393, 398 (1971)). "What constitutes proof of malice will vary depending on the factual circumstances in each case." *State v. McBride*, 109 N.C. App. 64, 67, 425 S.E.2d 731, 733 (1993). It is defendant's contention, however, that the trial court improperly charged the jury concerning malice, as the term was defined by our Supreme Court in *State v. Wilkerson*, 295 N.C. 559, 247 S.E.2d 905 (1978). As the Court stated,

> "[Malice] comprehends not only particular animosity 'but also wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty and deliberately bent on mischief, though there may be no intention to injure a particular person.' " . . . " '[It] does not necessarily mean an actual intent to take human life; it may be inferential or implied, instead of positive, as when an act which imports danger to another is done so recklessly or wantonly as to manifest depravity of mind and disregard of human life.' " "In such a situation 'the law regards the circumstances of the act as so harmful that the law punishes the act as though malice did in fact exist.' "

*Id.* at 578-579, 247 S.E.2d at 916 (quoting *State v. Wrenn*, 279 N.C. 676, 686-87, 185 S.E.2d 129, 135 (1971) (citations omitted)).

In the present case, the trial court instructed the jury as follows regarding the kind of "depraved-heart" malice described in *Wilkerson*:

> You have asked me with regard to wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, a mind regardless of social duty and deliberately bent on mischief, as to whether all of these must be present. My answer to that is no. One of these, some of these, or all of these may be proved and may be sufficient to supply the malice necessary for second degree murder. That is a factual determination that you, the jury, must make[.]

Defendant takes issue with this instruction and argues that "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty and deliberately bent on mischief" constitute elements of "depraved-heart" malice.

Defendant contends that as such, all must exist before a jury can find that he acted maliciously. At oral arguments, however, defendant conceded that less than all—two or more—would be sufficient to show malice. We, therefore, reject defendant's contention and adopt, instead, the State's position that "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty and deliberately bent on mischief" are examples, any one of which may provide the malice necessary to convict a defendant of second-degree murder.

In support of this conclusion, we look to our rulings in *McBride*, 109 N.C. App. 64, 425 S.E.2d 731, and *State v. Hemphill*, 104 N.C. App. 431, 409 S.E.2d 744 (1991). In *McBride*, this Court upheld the defendant's conviction of second-degree murder, concluding that malice was sufficiently established where the evidence showed that defendant acted with (1) "a mind without regard for social duty and with 'recklessness of consequences' "; (2) "a mind deliberately 'bent on mischief' "; and (3) " 'a mind utterly without regard for human life and social duty.' " *McBride*, 109 N.C. App. at 68, 425 S.E.2d at 734 (citations omitted). Likewise, in *Hemphill*, we held that the evidence showing "that defendant acted with 'recklessness of consequences' " was sufficient to support a finding of malice necessary to convict the defendant of second-degree murder. *Hemphill*, 104 N.C. App. at 434, 109 S.E.2d at 745. The holdings in *McBride* and *Hemphill* indicate that "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty and deliberately bent on mischief" are examples of circumstances which, if proven to exist, allow the jury to infer malice. Accordingly, we hold that the trial court did not err in charging the jury that "[o]ne of these, some of these, or all of these may be proved and may be sufficient to supply the malice necessary for second degree murder."

[2] Defendant next argues that the trial court erred in defining the phrase "deliberately bent on mischief" in response to the jury's request for "legally accepted paraphrases of the [term]." Defendant takes particular exception to the following language:

[T]his notion of a mind regardless of social duty and deliberately bent on mischief . . . connotes conduct as exhibits conscious indifference to consequences and circumstances wherein probability of harm to another within [the] circumference of such conduct is reasonably apparent, though no harm to such other is intended.

Defendant contends that this language contradicted the plain meaning of the phrase "deliberately bent on mischief" and "erroneously paralleled the definition of culpable negligence." However, in this jurisdiction, it is well-settled "that a charge is to be construed as a whole and isolated portions of a charge will not be held prejudicial where the charge as a whole is correct and free from objection." *State v. Poole*, 305 N.C. 308, 324, 289 S.E.2d 335, 345 (1982). Moreover, " '[i]t is not sufficient to show that a critical examination of the judge's words, detached from the context and the incidents of the trial, are capable of an interpretation from which an expression may be inferred.' " *Id.* (quoting *State v. Gatling*, 275 N.C. 625, 633, 170 S.E.2d 593, 598 (1969)). Having reviewed the instruction in its entirety, we discern no error.

The record shows that immediately after giving the challenged portion of the instruction, the trial court explained that the phrase "deliberately bent on mischief" further

[c]onnotes an entire absence of care for the safety of others which exhibits indifference to consequences. It connotes conduct where the actor, having reason to believe his act may injure another, does it, being indifferent to whether it injures or not. It indicates a realization of the imminence of danger, and reckless disregard, complete indifference and unconcern for probable consequences. It connotes conduct where the actor is conscious of his conduct, and conscious of his knowledge of the existing conditions that injury would probably result, and that, with reckless indifference to consequences, the actor consciously and intentionally did some wrongful act to produce injurious result.

This portion of the charge, read in the context of the entire instruction, correctly conveyed to the jury that it could infer malice if it found that the acts of defendant " 'manifest depravity of mind and disregard of human life.' " *Wilkerson*, 295 N.C. at 578, 247 S.E.2d at 916 (quoting *Wrenn*, 279 N.C. at 687, 185 S.E.2d at 135). Therefore, defendant's argument must fail.

[3] Next, defendant contends that the trial court committed reversible error in giving "additional instructions" to the jury without first allowing counsel an opportunity to be heard. Defendant argues that the trial court acted in violation of section 15A-1234(c) of the General Statutes. We cannot agree.

After the jury has retired to deliberate, the trial court "may give appropriate additional instructions to . . . [r]espond to an inquiry of the jury made in open court[.]" N.C. Gen. Stat. § 15A-1234(a) (1997). The statute further provides that:

> Before the judge gives additional instructions, he must inform the parties generally of the instructions he intends to give and afford them an opportunity to be heard. The parties upon request must be permitted additional argument to the jury if the additional instructions change, by restriction or enlargement, the permissible verdicts of the jury. Otherwise, the allowance of additional argument is within the discretion of the judge.

N.C.G.G. § 15A-1234(c). Where the trial judge simply repeats or clarifies instructions previously given and "d[oes] not add substantively to those instructions," the latter instructions are not "additional instructions" as that term is contemplated in section 15A-1234(c), and the trial judge need not consult with the parties or give them an opportunity to be heard in advance of giving such instructions. *State v. Williamson*, 122 N.C. App. 229, 236, 468 S.E.2d 840, 845 (1996).

Contrary to defendant's assertion, the instruction giving "legally-accepted paraphrases of 'deliberately bent on mischief' " was not a substantive addition to the original instruction. The word paraphrase is defined as "[a] restatement of a text or passage in another form or other words, often to clarify meaning." AMERICAN HERITAGE DICTIONARY 602 (3rd ed. 1994). Thus, the challenged instruction constitutes a clarification, and as such, the trial court was not required to inform the parties or afford them an opportunity to be heard.

Even assuming, *arguendo*, that the trial court erred in this regard, the error was harmless, because defendant has failed to show that he was prejudiced by the alleged omission. In light of our holding that the instructions were correct, when viewed as a whole, we cannot envision how a different verdict would likely have ensued had the trial court notified the parties of the instructions it intended to give or permitted them an opportunity to be heard. *See Rice*, 82 N.C. App. 318, 346 S.E.2d 205 (stating that appellant must show not only error, but that absent error, result probably would have been different). Defendant's argument is, therefore, overruled.

**[4]** Defendant further argues that the trial court erred in permitting Officer Austin to testify that, in his opinion, defendant was impaired and unable to drive. Again, we must disagree.

Rule 701 of the North Carolina Rules of Evidence provides as follows regarding the admissibility of opinion testimony by lay witnesses:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

N.C.R. Evid. 701. Furthermore, the rule is well-established that " 'a lay witness who has personally observed a person may give his opinion as to whether that person was under the influence of intoxicants.' " *State v. Adkerson*, 90 N.C. App. 333, 338, 368 S.E.2d 434, 437 (1988) (quoting *State v. Lindley*, 286 N.C. 255, 258, 210 S.E.2d 207, 209 (1974)).

In the case *sub judice*, Officer Austin testified that in his opinion, defendant was appreciably impaired and unable to operate a vehicle on the night of the collision. Officer Austin's opinion was based on his experience as a law enforcement officer in conjunction with his observations of the circumstances surrounding the collision. Officer Austin testified that as he proceeded to the scene, he noted the posted speed limits, and when he arrived at the place where the accident occurred, he observed the position and condition of the vehicles involved. He stated that he also witnessed defendant's behavior at the scene and described him as "giving E.M.S. quite a hard time." When Officer Austin later interviewed defendant at the hospital, he detected a "moderate to strong" odor of alcohol about defendant's person. He further noted that defendant's eyes were bloodshot and watery and that defendant had difficulty focusing on the officer during the interview. Armed with these facts, a police officer with more than three years' experience in the enforcement of motor vehicle laws and who has been personally involved in the investigations of nearly 200 driving while impaired cases is competent to express an opinion that defendant was under the influence of alcohol when he collided with the victims' vehicle. We, therefore, hold that the trial court was correct in allowing Officer Austin to offer his opinion on this matter, and we reject defendant's argument to the contrary.

[5] Further, defendant argues that the trial court erred in admitting his prior traffic violations into evidence and in instructing the jury that it could consider such evidence "to establish a pattern of reckless and inherently dangerous conduct to substantiate malice . . . and

to show the absence of accident." Defendant contends that his prior traffic offenses were not sufficiently similar to the circumstances of the collision at issue to be probative of malice or absence of accident. We cannot agree.

Rule 401 of the North Carolina Rules of Evidence defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401. Thus, evidence tending to support the theory of the State's case is generally admissible. *State v. Coffey*, 326 N.C. 268, 280, 389 S.E.2d 48, 55 (1990). Under Rule 404(b),

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.R. Evid. 404(b). As our Supreme Court has recognized, this " 'list of permissible purposes for admission of "other crimes" evidence is not exclusive, and such evidence is admissible as long as it is relevant to any fact other than the defendant's propensity to commit the crime.' " *State v. Pierce*, 346 N.C. 471, 490, 488 S.E.2d 576, 587 (1997) (quoting *State v. White*, 340 N.C. 264, 284, 457 S.E.2d 841, 852-53, *cert. denied*, 516 U.S. 994, 133 L. Ed. 2d 436 (1995)). Moreover, this Court has repeatedly held that evidence of prior convictions is admissible under Rule 404(b) to show the malice necessary to support a second-degree murder conviction. *State v. Grice*, 131 N.C. App. 48, 505 S.E.2d 166 (1998) (prior convictions for driving under the influence admissible as evidence of malice); *McBride*, 109 N.C. App. 64, 425 S.E.2d 731 (prior driving while impaired convictions may be offered to show malice); *State v. Byers*, 105 N.C. App. 377, 413 S.E.2d 586 (1992) (pending driving while impaired charge admissible to show requisite mental state for second-degree murder).

As previously noted, the State, in the present case, sought to establish the malice element of second-degree murder by showing that defendant committed an act evidencing a total disregard for human life—i.e., showing "wickedness of disposition," "recklessness of consequences" or "a mind regardless of social duty and deliberately bent on mischief." Evidence of defendant's prior traffic violations—driving 75 mph in a 45 mph zone, 76 mph in a 45 mph zone, 70

mph in a 35 mph zone, and 70 mph in a 55 mph zone—was relevant to establish defendant's "depraved heart" on the night he struck the victims' vehicle while rounding a sharp curve at a speed at least 40 mph over the posted limit. Thus, we hold that the evidence was properly admitted under Rule 404(b) and that the trial court gave an appropriate limiting instruction.

**[6]** Defendant next challenges the trial court's failure to exclude information from his medical records on the ground that such records were obtained in violation of section 8-53 of the General Statutes. Defendant argues that his statement to Dr. Mazur that he drank "several shots and several beers" on the night of the accident was erroneously admitted into evidence. We discern no prejudicial error.

Section 8-53 of the General Statutes sets forth the procedure for compelling the disclosure of information ordinarily protected by physician-patient privilege. *State v. Drdak*, 330 N.C. 587, 411 S.E.2d 604 (1992). Under the statute, a party seeking disclosure of such information must obtain an order of the presiding judge compelling disclosure, "if in his opinion disclosure is necessary to a proper administration of justice." N.C. Gen. Stat. § 8-53 (1986). The statute further provides that "if the case is in superior court the judge shall be a superior court judge." *Id.*

Defendant contends that because the order compelling the disclosure of his medical records was issued by a district court judge, rather than a superior court judge, the disclosure was unlawful, and the records should have been suppressed. While the State concedes, and we agree, that the "order compelling the disclosure of [defendant's] medical records should have come from a superior court judge," defendant has not shown prejudicial error. "An error is prejudicial if there is a reasonable possibility that a different result would have occurred at trial if the error had not been committed." *State v. Proctor*, 62 N.C. App. 233, 236, 302 S.E.2d 812, 815 (1983). In view of the overwhelming evidence that on the night in question, defendant had a strong odor of alcohol on his breath, we are of the opinion that there is no reasonable possibility that the jury would have reached a different result had the evidence of defendant's statement been excluded. This argument fails.

**[7]** Additionally, defendant argues that the trial court erred by failing to dismiss the charges of second-degree murder, because the State's evidence was insufficient to support a finding of malice. We cannot agree.

In ruling on a motion to dismiss, the trial court is to view all of the evidence, whether competent or incompetent, in the light most favorable to the State, giving it the benefit of every reasonable inference drawn from the evidence. *State v. Dick*, 126 N.C. App. 312, 317, 485 S.E.2d 88, 91, *disc. review denied*, 346 N.C. 551, 488 S.E.2d 813 (1997). Where there is substantial evidence of each essential element of the crime charged, the motion to dismiss should be denied. *State v. Williams*, 127 N.C. App. 464, 490 S.E.2d 583 (1997). " 'Substantial evidence' " is defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 467, 490 S.E.2d at 586 (quoting *Rusher v. Tomlinson*, 119 N.C. App. 458, 465, 459 S.E.2d 285, 289 (1995), *aff'd*, 343 N.C. 119, 468 S.E.2d 57 (1996)). Any contradictions or discrepancies in the evidence are for the jury to resolve, and these inconsistencies, by themselves, do not serve as grounds for dismissal. *State v. Hamlet*, 312 N.C. 162, 169, 321 S.E.2d 837, 842 (1984).

"Second-degree murder is the unlawful killing of a human being with malice but without premeditation and deliberation." *Grice*, 131 N.C. App. at 53, 505 S.E.2d at 169. As previously stated, malice necessary to establish second-degree murder may be inferred from conduct evincing " 'recklessness of consequences' " or " 'a mind regardless of social duty and deliberately bent on mischief,' " such as manifests a total disregard for human life. *Wilkerson*, 295 N.C. at 578-79, 247 S.E.2d at 916 (quoting *Wrenn*, 279 N.C. at 687, 185 S.E.2d at 135). Viewed in the light most favorable to the State, the evidence tends to show that defendant, with a history of driving at speeds far in excess of the posted limits, entered a sharp curve with a speed limit of 35 mph at a speed in excess of 70 mph while under the influence of alcohol. Defendant collided head-on with an on-coming vehicle and caused the deaths of two persons. We hold that this evidence was sufficient to go to the jury on the issue of whether defendant acted maliciously in causing the deaths of Bush and Litrell, and the trial court did not err in denying defendant's motion to dismiss.

[8] In his final argument, defendant takes issue with the trial court's failure to find any factors in mitigation of his sentence. Defendant contends that the evidence conclusively established that he was a person of good character, with a support system in the community, a positive employment history, and a good treatment prognosis. Nevertheless, where the trial court imposes sentences within the presumptive range for all offenses of which defendant was convicted, he is not obligated to make findings regarding aggravating and mitigat-

ing factors. *State v. Teasley,* 82 N.C. App. 150, 346 S.E.2d 227 (1986). In the present case, no error occurred, since the trial court sentenced defendant within the presumptive range.

In light of all of the foregoing, we hold that defendant received a fair trial, free from prejudicial error.

No error.

Judges LEWIS and WALKER concur.